<u>UNITED STATES DISTRICT COURT</u>

Pedro Chairez  Y-35814
Menard Correctional Center
P.O. Box 1000
Menard, IL  62259
    pro se

To: Clerk of Court,

  1. Enclosed/attached via e.File, is Plaintiffs 49 pg. complaint §1983
  2. Also attached, is Plaintiff Exhibits. 19 EXHIBITS (37 pgs. total)
  3. Plaintiff is having his family immediately pay the $405.00 filing
     fee, once it is e-filed.

                                    Pedro Chairez

                        dated: Jan. 15TH, 2025

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Illinois

Pedro Chairez )
_____ )   Case Number: __25-62-DWD__
_____ )
_____ )   *(Clerk's Office will provide)*
*Plaintiff(s)/Petitioner(s)* )
v. )   ☒ CIVIL RIGHTS COMPLAINT
)   pursuant to 42 U.S.C. §1983 (State Prisoner)
Marcellus Ottensmeier, et. al. )   ☐ CIVIL RIGHTS COMPLAINT
Kevin Reichert; Lukas Bohnert; )   pursuant to 28 U.S.C. §1331 (Federal Prisoner)
Joshua Schoenbeck; Diane Armstrong; )   ☐ CIVIL COMPLAINT
Lt. Lowre; all IDOC officials )   pursuant to the Federal Tort Claims Act, 28 U.S.C.
*Defendant(s)/Respondent(s)* )   §§1346, 2671-2680, or other law

## I.   JURISDICTION

### Plaintiff:

A.   Plaintiff's mailing address, register number, and present place of confinement.

Pedro Chairez Y35814
Menard Correctional Center
P.O. Box 1000
Menard, IL 62259

### Defendant #1:

B.   Defendant __Marcellus Ottensmeier__ is employed as
 (a)   (Name of First Defendant)

__a Correctional officer for the Intel Unit at Menard__
 (b)   (Position/Title)

with __Illinois Dept of Corrections (IDOC)__
 (c)   (Employer's Name and Address)

__711 Kaskaskia St. Menard, IL 62259__

At the time the claim(s) alleged this complaint arose, was Defendant #1 employed by the state, local, or federal government?   ☒ Yes   ☐ No

If your answer is YES, briefly explain:

He was a C.O. for IDOC, working for the Intel Unit

Rev. 10/3/19

1

Defendant # 2

C.    Defendant Kevin Reichert is employed as Assistent Warden of Operations with IDOC, Menard.

At all times in the complaint, he was employed by the State As Asst. Warden of Operations : 711 Kaskaskia St. Menard, IL 62259

Defendant # 3

D.    Defendant Lukas Bohnert is employed as a Lieutenant at Menard, IDOC.

At all times in the complaint, he was employed by the State, as a Lt. and supervisor of the Intel unit.
711 Kaskaskia St. Menard. IL 62259

Defendant # 4

E.    Defendant Joshua A. Schoenbeck is employed as a Major at Menard, IDOC.

At all times in the complaint, he was employed by the State.
He was the Chair Person for the Adjustment Committee.
711 Kaskaskia St. Menard, IL 62259

Defendant # 5

F.    Defendant Diane Armstrong is employed as an Assistant Warden for IDOC. Exact facility unknown.

At all times in the complaint, she was employed by the State.
She was Chair Person at Regional Multidisciplinary Committee (RMC) for Administrative Detention Placement
711 Kaskaskie St. Menard, IL 62259
1301 Concordia Ct. Springfield, IL 62794

2

Defendant # 5

6.    Defendant Lt. Loure    is employed as a Regional
Commander for Intel, IDOC

He was a member of the RMC for Administrative Detention
Placement    711 Kaskaskia St. Menard, Il. 62259
            1301 Concordia Ct. Springfield, IL   62794

3

## II.   PREVIOUS LAWSUITS

A.   Have you begun any other lawsuits in state or federal court while you were in prison or jail (during either your current or a previous time in prison or jail), e.g., civil actions brought under 42 U.S.C. § 1983 (state prisoner), 28 U.S.C. § 1331 (federal prisoner), 28 U.S.C. §§ 1346, 2671-2680, or other law?   ■Yes  ☐No

B.   If your answer to "A" is YES, describe each lawsuit in the space below. If there is more than one lawsuit, you must describe the additional lawsuits on another sheet of paper using the same outline. **List ALL lawsuits in any jurisdiction and indicate the court where they were filed to the best of your ability**, including those that resulted in the assessment of a "strike" under 28 U.S.C. § 1915(g) and/or those that were dismissed for being frivolous, malicious, or for failure to state a claim (see 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2); Federal Rule of Civil Procedure 12(b)(6)). FAILURE TO FULLY DISCLOSE YOUR LITIGATION HISTORY, INCLUDING "STRIKES," MAY RESULT IN SANCTIONS THAT INCLUDE DISMISSAL OF THIS ACTION.

1.   Parties to previous lawsuits:
Plaintiff(s): Plaintiff had 2 previous civil actions against Arizona Dept. Corrections. And Delaware Dept. Corrections. 2004 appt. for Az / 2011 for Delaware
Defendant(s): Both against the state prison system. Plaintiff lost all records durning transfer.

2.   Court (if federal court, name of the district; if state court, name of the county): Arizona District Court Delaware District Court

3.   Docket number: N/A

4.   Name of Judge to whom case was assigned: N/A

5.   Type of case (for example: Was it a habeas corpus or civil rights action?): 42 U.S.C. 1983 for both.
1) Ariz. was for Indefinite Confinement in SHU.
2) Delaware was for Excessive Force against officers

6.   Disposition of case (for example: Was the case dismissed? Was it appealed? Is it still pending?):
1st was lost in Summary Judgement. No appeal.
2nd was setled out of court for monitary damages

Rev. 10/3/19

4

7. Approximate date of filing lawsuit: 1st was appx. 2002-2004
2nd was 2011

8. Approximate date of disposition:
1st was within 2 yrs.
2nd was 2022

9. Was the case dismissed as being frivolous, malicious, or for failure to state a claim upon which relief may be granted and/or did the court tell you that you received a "strike?"

No and No

## III.    GRIEVANCE PROCEDURE

A. Is there a prisoner grievance procedure in the institution?  ☑ Yes   ☐ No

B. Did you present the facts relating to your complaint in the prisoner grievance procedure?  ☑ Yes   ☐ No

C. If your answer is YES,
1. What steps did you take? I exhausted all administrative remedies available. I filed about 6 grievances. All were properly exhausted. However, 2 grievances, which Plaintiff filed in May of 2024, have not been processed past the first level. 8 months ago. Plaintiff repeatedly requested relief, because policy dictates they are only allowed 2 months. Non-responsive.
2. What was the result?

All grievances received a negative result and resolved nothing.

D. If your answer is NO, explain why not. N/A

E. If there is no prisoner grievance procedure in the institution, did you complain to prison authorities?  ☐ Yes   ☐ No
N/A

F. If your answer is YES,
1. What steps did you take?  N/A

Rev. 10/3/19

2.    What was the result?

G.    If your answer is NO, explain why not.

H.    Attach copies of your request for an administrative remedy and any
response you received.  If you cannot do so, explain why not:

Grievance Response from Administrative Review Board ARB.
Plus documents establishing Plaintiffs numerous requests and attempts
to process pending grievances, from 5/2024

Rev. 10/3/19

6



J.B. Pritzker
Governor

Latoya Hughes
Acting Director

## The Illinois Department of Corrections

1301 Concordia Court, P.O. Box 19277 • Springfield, IL 62794-9277 • (217) 558-2200 TDD: (800) 526-0844

Name:  Chairez, Pedro

9/16/24
Date

ID# :  Y35814

Facility:  Menard

This is in response to your grievance received on 8/28/24 . This office has determined the issue will be addressed without a formal hearing. A review of the Grievance, Grievance Officer/CAO response to the grievance has been conducted. For a grievance that is direct review by the ARB, a review of the Grievance has been conducted.

Your issue regarding: Grievance dated: 7/8/24        Grievance Number: K4-0724-3032   Griev Loc: MEN

☐  Medical _____

☐  Dietary _____

☐  Personal Property _____

☐  Mailroom/Publications _____

☐  Staff Conduct _____

☐  Commissary / Trust Fund _____

☐  Conditions (cell conditions, cleaning supplies, etc.) _____

☐  Disciplinary Report: Dated: _____ Incident # _____

■  Other   Grieves being denied release from administrative detention. (6/28/24)

**Based on a review of all available information, this office has determined your grievance to be:**

☐  Affirmed

☐  Denied as the facility is following the procedures outlined in DR525.

☐  Denied, in accordance with DR504F, this is an administrative decision.

☐  Denied as procedures were followed in accordance with DR 420 for removal/denial from/for an assignment.

■  Denied, this office finds the issue was appropriately addressed by the facility Administration.

☐  Denied as this office finds no violation of the grievant's due process in accordance with DR504.80 and DR504.30. This office is reasonably satisfied the offense cited in the report was committed.

☐  Other: _____

FOR THE BOARD: _____
Paige Long
Administrative Review Board

CONCURRED: _____
Latoya Hughes
Acting Director

CC:  Warden, Menard _____ Correctional Center
       Chairez, Pedro _____, ID# Y35814

*Mission: To serve justice in Illinois and increase public safety by promoting positive change for those in custody, operating successful reentry programs, and reducing victimization.*

www.illinois.gov/idoc

7

J.B. Pritzker
Governor



Latoya Hughes
Acting Director

## The Illinois Department of Corrections

1301 Concordia Court, P.O. Box 19277 • Springfield, IL 62794-9277 • (217) 558-2200 TDD: (800) 526-0844

Name:    Chairez, Pedro                                          9/16/24
                                                                 Date
ID# :    Y35814

Facility:    Menard

This is in response to your grievance received on __8/28/24__. This office has determined the issue will be addressed without a formal hearing. A review of the Grievance, Grievance Officer/CAO response to the grievance has been conducted. For a grievance that is direct review by the ARB, a review of the Grievance has been conducted.

Your issue regarding: Grievance dated: 7/10/24    Grievance Number: K4-0724-3225    Griev Loc: MEN

☐    Medical _____

☐    Dietary _____

☐    Personal Property _____

■    Mailroom/Publications    Grieves mail is being tampered with, held onto & not sent out timely & privileged mail being opened & returned. (7/10/24)

☐    Staff Conduct _____

☐    Commissary / Trust Fund _____

☐    Conditions (cell conditions, cleaning supplies, etc.) _____

☐    Disciplinary Report: Dated: _____ Incident # _____

☐    Other _____

**Based on a review of all available information, this office has determined your grievance to be:**

☐    Affirmed

☐    Denied, in accordance with DR504F, this is an administrative decision.

■    Denied, this office finds the issue was appropriately addressed by the facility Administration.

☐    Other: _____

☐    Denied as the facility is following the procedures outlined in DR525.

☐    Denied as procedures were followed in accordance with DR 420 for removal/denial from/for an assignment.

☐    Denied as this office finds no violation of the grievant's due process in accordance with DR504.80 and DR504.30. This office is reasonably satisfied the offense cited in the report was committed.

FOR THE BOARD: _____    CONCURRED: _____
                Paige Long                                  Latoya Hughes
         Administrative Review Board                        Acting Director

CC:  Warden,  Menard _____ Correctional Center
     Chairez, Pedro _____ , ID# Y35814

*Mission: To serve justice in Illinois and increase public safety by promoting positive change for those in custody, operating successful reentry programs, and reducing victimization.*

**www.illinois.gov/idoc**



J.B. Pritzker
Governor

Latoya Hughes
Acting Director

## The Illinois Department of Corrections

1301 Concordia Court, P.O. Box 19277 • Springfield, IL 62794-9277 • (217) 558-2200 TDD: (800) 526-0844

Name:    CHAIREZ, PEDRO                                                    8/13/24

ID# :    Y35814                                                              Date

Facility:    MENARD

This is in response to your grievance received on 07/25/2024 , This office has determined the issue will be addressed without a formal hearing. A review of the Grievance, Grievance Officer/CAO response to the grievance has been conducted. For a grievance that is direct review by the ARB, a review of the Grievance has been conducted.

Your issue regarding: Grievance dated: 06/15/2024    Grievance Number: K4-0624-2670    Griev Loc: MEN

☐ Medical _____

☐ Dietary _____

☐ Personal Property _____

☐ Mailroom/Publications _____

☑ Staff Conduct ____ CLAIMS MENARD STAFF WENT TO GRIEVANT'S WIFE'S HOUSE AND THREATENED HER 6/14/24.

☐ Commissary / Trust Fund _____

☐ Conditions (cell conditions, cleaning supplies, etc.) _____

☐ Disciplinary Report: Dated: _____ Incident # _____

☐ Other _____

**Based on a review of all available information, this office has determined your grievance to be:**

☐ Affirmed

☐ Denied as the facility is following the procedures outlined in DR525.

☐ Denied, in accordance with DR504F, this is an administrative decision.

☐ Denied as procedures were followed in accordance with DR 420 for removal/denial from/for an assignment.

☐ Denied, this office finds the issue was appropriately addressed by the facility Administration.

☐ Denied as this office finds no violation of the grievant's due process in accordance with DR504.80 and DR504.30. This office is reasonably satisfied the offense cited in the report was committed.

☑ Other: RESOLVED; PER I/A, AN OUTSIDE INVESTIGATION INTO THE MATTER IS ONGOING.

FOR THE BOARD: _____    CONCURRED: _____
                Jeremy Bonnett                              Latoya Hughes
                Administrative Review Board                  Acting Director

CC: Warden, MENARD _____ Correctional Center
    CHAIREZ, PEDRO _____ , ID# Y35814

*Mission: To serve justice in Illinois and increase public safety by promoting positive change for those in custody, operating successful reentry programs, and reducing victimization.*

**www.illinois.gov/idoc**

ILLINOIS DEPARTMENT OF CORRECTIONS

## Administrative Review Board
## Return of Grievance or Correspondence

**Individual in**
**Custody Name:**    Chairez _____    Pedro _____    ___ Y35814 ___
                          Last Name                    First Name              MI      ID#

**Facility:**  Menard _____

☒ Grievance: Facility Grievance # (if applicable) K4-1223-2304 ___ Dated: 12/27/2023 ___  or ☐ Correspondence: Dated: _____

Received: 7/31/2024 ____ Regarding: Grieves DR received on 12/19/23. _____
          Date

The attached grievance or correspondence is being returned for the following reasons:

**Additional information required:**

☐ Provide your original written Individual in Custody's Grievance, DOC 0046, including the counselor's response, if applicable.

☐ Provide a copy of the Response to Individual in Custody's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal; if timely.

☐ Provide dates when incidents occurred.

☐ Unable to determine nature of grievance or correspondence; submit additional specific information.  Please return the attached grievance or correspondence with the additional information requested to: Administrative Review Board, 1301 Concordia Court, Springfield, IL 62794-9277

**Misdirected:**

☐ Contact your correctional counselor or Field Services regarding this issue.

☐ Request restoration of Statutory Sentence Credits to Adjustment Committee.  If the request is denied by the facility, utilize the individual in custody grievance process outlined in Department Rule 504 for further consideration.

☐ Contact the Record Office with your request or to provide additional information.

☐ Personal property and medical issues are to be reviewed at your current facility prior to review by the Administrative Review Board.

☐ Address concerns in a letter to:  Illinois Prisoner Review Board, 319 E. Madison St., Suite A, Springfield, IL  62706

**No further redress:**

☐ Award of Earned Discretionary Sentence Credit is a discretionary administrative decision; therefore, this issue will not be addressed further.

☐ Administrative transfer denials are discretionary administrative decisions; therefore, this issue will not be addressed further.

☐ Not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further.

☒ Administrative Review Board received the appeal 30 days past date of Chief Administrative Officer's decision; therefore, this issue will not be addressed further.

☐ This office previously addressed this issue on _____
                                                  Date

☐ No justification provided for additional consideration.

**Other** (specify): Received at the ARB past the 30-day time frame to appeal a grievance as outlined in DR504(F). Grievant's signature on DOC0047 indicates they received and appealed the grievance on 4/22/24. CHAMP entry for GRV #K4-0724-3225 reflects that there is no indication the facility is withholding or tampering with the grievant's mail. You may send grv #K4-0724-3225 to ARB, if timely, and if you wish to pursue the issue.

Completed by:  Paige Long _____    _____    8/12/2024
                        Print Name                        Signature              Date

# State of Illinois - Department of Corrections

## Counseling Summary

| | | | |
|---|---|---|---|
| **IDOC #** | Y35814 | **Counseling Date** | 05/08/24 12:48:20:960 |
| **Offender Name** | CHAIREZ, PEDRO | **Type** | Collateral |
| **Current Admit Date** | 04/11/2019 | **Method** | Grievance |
| **MSR Date** | 05/20/2033 | **Location** | MEN GRIEVANCE OFFICE |
| **HSE/GAL/CELL** | N2-B -06 | **Staff** | RAMSEY, SHEILA M., Office Coordinator |

Grievance Office received grievance #K4-0524-2131 regarding blocked email correspondence and harassment dated 5/7/2024. Forwarded to Clinical Services for 1st level counselor response.

Initial filing    5/7/24

11

**Print Date 5/8/2024**

# State of Illinois - Department of Corrections

## Counseling Summary

| | | | |
|---|---|---|---|
| **IDOC #** | Y35814 | **Counseling Date** | 05/08/24 12:49:05:423 |
| **Offender Name** | CHAIREZ, PEDRO | **Type** | Collateral |
| **Current Admit Date** | 04/11/2019 | **Method** | Grievance |
| **MSR Date** | 05/20/2033 | **Location** | MEN GRIEVANCE OFFICE |
| **HSE/GAL/CELL** | N2-B -06 | **Staff** | RAMSEY, SHEILA M., Office Coordinator |

Grievance Office received grievance #K4-0524-2132 regarding visitation and email restrictions, harassment dated 5/7/2024. Forwarded to Clinical Services for 1st level counselor response.

Initial filing    5/7/24

**Print Date 5/8/2024**

12

*retaliation*

## State of Illinois - Department of Corrections

## Counseling Summary

| | | | |
|---|---|---|---|
| **IDOC #** | Y35814 | **Counseling Date** | 05/22/24 12:45:26:870 |
| **Offender Name** | CHAIREZ, PEDRO | **Type** | Collateral |
| **Current Admit Date** | 04/11/2019 | **Method** | Grievance |
| **MSR Date** | 05/20/2033 | **Location** | MEN GRIEVANCE OFFICE |
| **HSE/GAL/CELL** | N2-B -07 | **Staff** LOYD, BETTY J., Office Associate | |

Grievance Office received grievance #K4-0524-2131 dated 5/7/2024 regarding blocked email correspondence and harassment. Grievance forwarded to Grievance Officer for review at second level.

1st status check

6/25/24

13

**Print Date 6/25/2024**

# State of Illinois - Department of Corrections

## Counseling Summary

| | | | |
|---|---|---|---|
| **IDOC #** | Y35814 | **Counseling Date** | 05/22/24 12:46:12:623 |
| **Offender Name** | CHAIREZ, PEDRO | **Type** | Collateral |
| **Current Admit Date** | 04/11/2019 | **Method** | Grievance |
| **MSR Date** | 05/20/2033 | **Location** | MEN GRIEVANCE OFFICE |
| **HSE/GAL/CELL** | N2-B -07 | **Staff** | LOYD, BETTY J., Office Associate |

Grievance Office received grievance #K4-0524-2132 dated 5/7/2024 regarding visitation restrictions, email restrictions and harassment. Grievance forwarded to Grievance Officer for review at second level.

1st status check

6/25/24

14

**Print Date  6/25/2024**

# State of Illinois - Department of Corrections

## Counseling Summary

| | | | |
|---|---|---|---|
| **IDOC #** | Y35814 | **Counseling Date** | 05/22/24 12:45:26:870 |
| **Offender Name** | CHAIREZ, PEDRO | **Type** | Collateral |
| **Current Admit Date** | 04/11/2019 | **Method** | Grievance |
| **MSR Date** | 05/20/2033 | **Location** | MEN GRIEVANCE OFFICE |
| **HSE/GAL/CELL** | N2-B -07 | **Staff** | LOYD, BETTY J., Office Associate |

Grievance Office received grievance #K4-0524-2131 dated 5/7/2024 regarding blocked email correspondence and harassment. Grievance forwarded to Grievance Officer for review at second level.

2nd status check

7/23/24

15

**Print Date 7/23/2024**

# State of Illinois - Department of Corrections

## Counseling Summary

| | | | |
|---|---|---|---|
| **IDOC #** | Y35814 | **Counseling Date** | 05/22/24 12:46:12:623 |
| **Offender Name** | CHAIREZ, PEDRO | **Type** | Collateral |
| **Current Admit Date** | 04/11/2019 | **Method** | Grievance |
| **MSR Date** | 05/20/2033 | **Location** | MEN GRIEVANCE OFFICE |
| **HSE/GAL/CELL** | N2-B -07 | **Staff** | LOYD, BETTY J., Office Associate |

Grievance Office received grievance #K4-0524-2132 dated 5/7/2024 regarding visitation restrictions, email restrictions and harassment. Grievance forwarded to Grievance Officer for review at second level.

2nd status check

7/23/24



16

**Print Date** 7/23/2024

# State of Illinois - Department of Corrections

## Counseling Summary

| | | | |
|---|---|---|---|
| **IDOC #** | Y35814 | **Counseling Date** | 10/28/24 14:25:15:963 |
| **Offender Name** | CHAIREZ, PEDRO | **Type** | Collateral |
| **Current Admit Date** | 04/11/2019 | **Method** | Grievance |
| **MSR Date** | 05/20/2033 | **Location** | MEN GRIEVANCE OFFICE |
| **HSE/GAL/CELL** | N2-B -07 | **Staff** | LOYD, BETTY J., Office Coordinator |

Received a kite dated 10/24/2024 requesting copies of grievance #'s: K4-0224-1053-sent copies, K4-0524-2132-pending 2nd level review, you will be sent a copy once it is answered, K4-0524-2131-pending 2nd level review, you will be sent a copy once it is answered, K4-0824-4107-sent a copy, K4-0824-4098-sent a copy. Was charged $1.20

3 status check
10/28/24

17

**Print Date 10/28/2024**

## State of Illinois · Department of Corrections
## Counseling Summary

| | | | |
|---|---|---|---|
| **IDOC #** | Y35814 | **Counseling Date** | 10/28/24 14:25:15:963 |
| **Offender Name** | CHAIREZ, PEDRO | **Type** | Collateral |
| **Current Admit Date** | 04/11/2019 | **Method** | Grievance |
| **MSR Date** | 05/20/2033 | **Location** | MEN GRIEVANCE OFFICE |
| **HSE/GAL/CELL** | N2-B -07 | **Staff** | LOYD, BETTY J., Office Coordinator |

Received a kite dated 10/24/2024 requesting copies of grievance #'s: K4-0224-1053-sent copies, K4-0524-2132-pending 2nd level review, you will be sent a copy once it is answered, K4-0524-2131-pending 2nd level review, you will be sent a copy once it is answered, K4-0824-4107-sent a copy, K4-0824-4098-sent a copy. Was charged $1.20

4th status check    11/7/24

This was sent to you on 10/28/24. you At 2nd level-pending

**Print Date** 11/7/2024

N² B-07

Chairez Y 35 8/4

## IV.    STATEMENT OF CLAIM

A.    State here, as briefly as possible, when, where, how, and by whom you feel your constitutional rights were violated. Do not include legal arguments or citations. If you wish to present legal arguments or citations, file a separate memorandum of law. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. If your claims relate to prison disciplinary proceedings, attach copies of the disciplinary charges and any disciplinary hearing summary as exhibits. You should also attach any relevant, supporting documentation.

\* Complaint Attached \*

Rev. 10/3/19

19

<u>COUNT I</u>

Plaintiff was retaliated against for exercising his First Amendment right to Freedom of Speech, under the United States Constitution. This retaliation claim is the foundation which the following Counts II through V are predicated upon.

1) On or about Sept. 1st, 2023, Plaintiff called his mother and requested that she make a formal complaint to Arizona Dept. Corrections (ADC) on his behalf,

2) Plaintiff is currently on an involuntary Interstate Compact from Arizona.

3) The complaint was in regards to Illinois Dept. of Corrections (IDOC), and the conditions of confinement at Menards Correctional Center (MCC). Specifically, the excessive heat, poor circulation, lack of yard time,

4) On Sept. 5th, 2023, Plaintiff's mother received an official reply from ADC via email, from Edwin Lao, Security Operations Administrator. See <u>EXH. A</u>

5) Mr. Lao advised Plaintiff's mother that he contacted the Warden at MCC inquiring into Plaintiff's concerns. The Warden catagorically denied all of Plaintiff's allegations in regards to conditions of confinement.

6) On or about Sept. 8th, 2023, Plaintiff personally wrote a letter to Defendant Reichert, Asst. Warden of Operations, outlining the previous concerns regarding excessive heat, poor circulation (fans were broke), consistently cancelling yard and commissary shortage. No reply.

7) On Sept. 21st, 2023, Plaintiff was abruptly forced from his cell under the threat of pepperspray by 3 Intel officers, and escorted to segregation, for the purpose of an investigation; no details were provided, except Intel said it was for the 'safety and security of the institution'.

8) Sept. 21st, 2023, was the beginning of a strategic and progressive pattern of retaliation by Defendant Ottensmeier, Defendant Lt. Bohnert, and Def. Reichert. It started with placing Plaintiff in segregation, writing bogus tickets, destroying and tampering with dozens upon dozens of letters, to the arbitrary and malicious placement in Administrative Detention (extreme isolation) and finally culminating in the permanent banning of my lawful wife, blocking her emails and removing her ph. number from my list.

9) It is relative to point out to the court, that Plaintiff was transferred to IDOC April 18th, 2019. And until Sept. 21st, 2023, appx. 4½ years, Plaintiff had been a model inmate. Never receiving a single ticket or incident since arriving in IDOC. Plaintiff was not problematic or disruptive. On the contrary, Plaintiff was recently married Jan. 26th, 2023 and had moved his wife from Arizona to Illinois, to nurture and substain a healthy marriage. Protecting and ensuring his visits, ph. calls and communication was of vital importance.

10) After sept. 21st, 2023, Plaintiff was forced to go without his property, hygiene, proper clothing, because Intel put a "Hold" on Plaintiff's property, for over 3 weeks.

11) Sometime in the middle of October of 2023, Def. Ottensmeier, came to conduct a cell search. Despite Plaintiff not having any property. Also, assigned officers who work the galleries, are required to conduct cell searches every 5 days of inmates. Plaintiff was already 'shaken-down', by staff, numerous times.

12) Plaintiff inquired why Intel was shaking him down, Def. Ottensmeier replied, " just wanted to see if your living conditions have been improved".

13) Oct. 17th, 2023, Plaintiff received a disciplinary ticket. This ticket alleged Plaintiff was in possession of gang-material from the local gangs. He was initially found guilty, but then found not guilty. He was also falsely charged with a dangerous weapon, for having a small screwdriver. That measured ½ inch long and ⅛ inch wide. It was not sharpened. This kind of tool, which is fairly common, are used to fix and repair various electronic devices. It's routinly just thrown away by staff. or, the worst, a simple contraband ticket. Dangerous Contraband is defined as; bombs, brass-knuckles, knives, bullets, etc. Plaintiff was found guilty. Plaintiff was also found guilty of a pamphelet, called Pharmacy Technician Certification Exam (PTCE). Which he received via institutional mail, to help study with his wife. He was found guilty for drug paraphenelia.

14) After receiving these two tickets (one for investigation) and coupled with Def. Ottensmeier comment durning the cell search, Plaintiff realized he was being unfairly targetted and singled-out for complaining about the conditions of confinement.

15) Between October of 2023 to December of 2024, Plaintiffs wife has mailed out well over 260 pieces of mail, cards and various other material.

16) And Def. Ottensmeier has intentionally destroyed, or otherwise disposed of appx. **125** letters. This doesn't take into account the majority of my mail was taking 4-6 weeks to arrive, some 2-3 months. Not once or twice, but on a routine basis. Repeatedly.

17) Plaintiff will elaborate more indepht in Count IV, specifically regarding his mail.

18) Def. Ottensmeier has acknowledged and admits, per policy for all A.D. inmates, all in-coming and out-going mail goes through him. Administrative Detention (AD)

19) Late October of 2023, Plaintiff filed 3 more grievances. One grievance disappeared, the other two, were properly logged. Plaintiff was disputing the improper finding of guilt, based on the ticket from Oct. 17th, 2023.

20) November 1st, 2023, Plaintiff wrote a letter to Major Hasemeyer, who was in-charge of the segregation building. Plaintiff complained of being harassed, and his mail being tampered with, and to investigate the bogus ticket. No reply.

21) November 10th, 2023, after no response, Plaintiff wrote Def. Reichert, detailing the same issues as he stated to Maj. Hasemeyer. Again, no reply.

22) Plaintiff was later informed that Maj. Hasemeyer, Def. Reichert and Def. Schoenbeck (who found me guilty on both my disc. tickets) All of them used to work in Intel and Internal Affairs. And that this small but powerful fraternaty, operate with impunity and have carte blanche within the facility. They also adhere to a code of silence. Including active Def's Lt. Bohnert, Ottensmeier and Lt. Loure.

23) At this point, Plaintiff became worried and apprehensive about continuing with his complaints/grievances, because of rumors and stories how treacherous and to what lengths Intel will go to break inmates of resistance or thumbing their nose at authority, or challenging their misconceived sense of power.

24) However, in early December of 2023, Plaintiffs wife chastized him and reminded Plaintiff to keep fighting to get out of Segregation, to get our contact visits back and our mail fixed. So Plaintiff told her to start calling Springfield, the Director and Warden Wills.

25) December 18th, 2023, Def. Ottensmeier comes to Plaintiffs cell and tells him to cuff-up, and proceeds to escort him to an area commonly called the bullpen. Plaintiff assumes its another harassing shake-down.

26) Def. Ottensmeier then hands Plaintiff an Administrative Detention (A.D.) Placement form, "Notice", to sign. EXH B _____ Full of lies and misinformation.

27) Plaintiff immediately inquired whats this about.? Because A.D. is the most restrictive and highest secured status in IDOC reserved only for the most violent, dangerous and predatory inmates.

28) Def. Ottensmeier stated, " you mess with us, we mess with you". Plaintiff replied, "he hadnt done nothing to be placed into AD", And Def. Ottensmeier stated, " you will by tomorrow". Plaintiff asked, who wrote this? Def. Ottenmeier said him/Def. Bohnert. Dec. 19th, 2023, Plaintiff did indeed receive a disciplinary ticket, per Intel. The ticket claimed (3) Confidential Sources said Plaintiff was allegedly distributing drugs. There was no confirmation by oath of their reliability. No dates, times, places or other relative details provided. EXH C _____

29) Plaintiff adamently denies these blantant lies.

30) Plaintiff will also go into further details disputing the AD placement and disciplinary ticket, in Counts II and III, respectively.

31) Plaintiff further notes that he was due to be released from segregation on Dec. 20th, 2023, from his first bogus ticket. Just two days away.

32) Dec. 20th, 2023, Plaintiff received a sham hearing for his AD placement. He was denied released, and at the filing of this suit, is still housed in AD Extreme isolation.

33) Dec. 22nd, 2023, Def. Schoenbeck (Lt) was chairperson at his disciplinary hearing, found him guilty. Def. Lt. Schoenbeck, is now Major Schoenbeck.

34) Plaintiff immediately filed an appeal and grievance pertaining to AD. And also filed a grievance concerning the bogus disc. ticket.

35) Jan. 2nd 2024, Plaintiff filed another grievance in regards to sanctions imposed on him, regarding visitation restriction. Sanctions that were never imposed, yet somehow entered into the computor system. Limiting his allowed visit time with his wife. Plaintiff ultimately won this grievance in March 2024.

36) Jan 9th, 2024 Plaintiff filed 3 more grievance regarding segregation policy.

37) Jan 26th, 2024 Plaintiff filed another grievance, because he hadnt been to yard, for over 4½ months.

38) In February 2024, Plaintiff wrote a 34 page letter to ADC, Floyd Curtis, essentially his case manager, detailing the conditions, harassment, tickets, and being retaliated against. It never arrived.

39) Again, in Feb. Def. Ottensmeier stopped by my cell and made a comment about quitting what Plaintiff is doing," before he loses it all."

40) Plaintiff took the threat seriously and stopped writing grievances.

41) On April 16th, 2024, Plaintiff received a denial from the Grievance Officer. in regards to the bogus disc. ticket issued on Dec. 18th, 2023.

42) April 22nd, 2024 Plaintiff mailed out 2 separate envelopes. The first, was a grievance from the Grievance Officer, denying my Disc. Ticket from Dec. 18th, 2024 These grievances have to be mailed directly to the Admin. Review Board in Springfield. The 2nd letter, was a detailed complaint to the Director, Latoya Huges, outlining the retaliation and lies perpetrated by Intel. Each envelope contained only 4 pages. EXH. D

43) Plaintiff did not know it at the time, but Def. Ottensmeier, held, and opened his privileged mail, for over 90 days. Then returned them, with all the pages stuffed inside just one envelope, and claimed that postage was due.

44) This prevented Plaintiff from timely exhausting his remedys for the disc. ticket. Plaintiff nonetheless refiled and filed a grievance. EXH E

45) On April 29th, 2024, wrote an official complaint to the Affirmative Action office for IDOC, to Howard Moore. Plaintiff sent it via his tablet (email) to his wife, asking her to forward it. EXH. F

46) Note to court, Def. Ottensmeier reads and personally clears all emails.

47) On April 30th, 2024, Plaintiff wrote another complaint to Affirmative Action, a different office, to Jocelyn Delgado. EXH. F

48) May 3rd, 2024, Def. Reichert, notified Plaintiffs wife, she was now permanently banned from visits, and video visits. EXH G

49) The reason listed, was "Intel, on-going investigation".

50) May 4th, 2024, Def. Ottensmeier, with Def. Bohnert approval, blocked Plaintiffs wife from his emails. And removed/restricted her ph. number from his list. Thereby severing all communication with his lawful wife.

51) Plaintiff, nor his wife, were ever disciplined, broke any rules, regulations

or any policies in regard to the privileges. They were maliciously, capriciously and done in retaliation for his numerous complaints and grievances.

52) About Aug. 16-19, 2024, Plaintiff saw Def. Reichert conducting a tour with people from the American Disabilities Act, and was able to briefly speak with him. Plaintiff immediately asked why he took my visits? Def. Reichert initially stated, "who are you"?

53) Plaintiff replied, "Pedro Chairez". Def. Reichert then stated, "oh, you're the couple who constantly complain and harass my staff".

54) Plaintiff replied, "we didn't do anything to justify taking our visits".

55) Def. Reichert replied, "you should of thought about that before you started making all those complaints and harassing my staff". And walked away.

56) Plaintiff elaborates further in Count II, permanent ban of visits.

57) On Oct. 1st, 2024 Plaintiff submitted a statement on his behalf, rebutting the allegations against him, for an A.D. hearing scheduled the following day.

58) Def. Ottensmeier picked-up this statement. Plaintiff was very critical of Intel, accusing them of lying and misleading the committee, to justify my continued housing in A.D. This statement was turned in by 9:00am.

59) By 2:30pm, Oct 1st, 2024, Def. Ottensmeier, denies 13 email messages from his mother.

60) In 5yrs in IDOC, Plaintiffs 75 yr. old mother, has never had any of her emails denied. Nor did she violate any of the terms and agreement as established by IDOC policy. EXH. H

61) Def. Ottensmeier, immediately retaliated against Plaintiff for submitting a critical statement against Intel. As Def. Ottensmeier is in charge of all mail, emails, coming and going.

62) Plaintiff is now intimidated and hesitant about submitting any future statements, for fear of losing contact with his mother. Even though every A.D. hearing were allowed to submit written statements on our behalf. Effectively suppressing the truth.

MEMORANDUM OF LAW
In Support of Count I


In asserting a First Amendment claim for retaliation, Plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in Defendants' decision to take the retaliatory action." Bridges v. Gilbert, 557 F. 3d 541, 546 (7ᵗʰ Cir. 2009).

Here, Plaintiff has alleged a series of protected activity under the First Amendment. Gomez v. Randle, 680 F. 3d 859, 866 (7ᵗʰ Cir. 2012)(inmates have a First Amendment right to file nonfrivolous grievances); Rowe v. Shake, 196 F. 3d at 782 (prisoners have protected First Amendment interest in both sending and receiving mail); Babcock v. White, 102 F. 3d 267, 276 (7ᵗʰ Cir. 1996)(federal courts have long recognized a prisoner's right to seek administrative or judicial remedy of conditions of confinement).

Plaintiff's last claim of retaliation, dealt with a statement he submitted in regards to his AD hearing. Wilkinson v. Austin, 545 U.S. 209, 226 (inmates must receive notice of the factual basis and a fair opportunity for rebuttal. Our procedural due process cases have consistently observed that these are among the most important procedural mechanisms for avoiding erroneous deprivations).

Clearly Plaintiff has demonstrated that his activity was a protected right guaranteed under the First Amendment.

Next, Plaintiff must allege factual allegations that he suffered deprivations that would likely deter an ordinary person from engaging in future First Amendment activity.

The chilling effects by Defendants' would undoubtable deter most prisoners from engaging in any further First Amendment activities. The tampering and destruction of in-coming and out-going mail. The bogus disc. tickets. Placement in AD and finally, the complete loss of communication, visits, emails with his wife. Bridges, 557 F.3d at 552 (...the alleged harassment by numerous prison employees in a variety of ways over a period of several months would deter a person of ordinary firmness from exercising his First Amendment activity).

Additionally, Plaintiff sufficiently alleged that his First Amendment activity was 'at least a motivating factor' in Defendants' decision to take retaliatory action. An act in retaliation for the exercise of a constitutionally protected right is actionable under 42 U.S.C. 1983, even if the act, when taken for different reasons, would have been proper. Howland v. Kilquist, 833 F.2d 639, 644 (7th Cir. 1987)( Retaliatory motive can be proven through circumstantial evidence). Also, Mays v. Springborn, 575 F.3d 643, 650 (7th Cir. 2009)(retaliation could be inferred from a chronology of events presented by the plaintiff that included alleged threats).

Plaintiff has easily stated a cause of action, against all Defendants!

27

## COUNT II

Plaintiff's procedural due process rights under the ~~Fourteenth~~ Amendment to the United States Constitution are being violated, based upon his continued, indefinite placement in Administrative Detention. Plaintiff hereto incorporates all asserted factual allegations in Count I. Also, implicates an Eight Amend. violation, cruel and unsual punishment.

63) On Dec. 18th, 2023. Plaintiff was served a "Notice of Administrative Detention Placement Review" form. EXH B

64) This "Notice" was filled with disinformation, vague allegations of drugs, and speculation concerning the discovery of drugs. The opposite of "factual basis".

65) The most disturbing and blantant lie, was the accusation of Plaintiff being directly involved in a prison riot that resulted in the death of a correctional officer. When Def. Ottensmeier, gave Plaintiff this Notice, one of the questions asked, was who wrote this rationale? Def. Ottensmeier replied that he helped compile it with Def. Lt. Behnert.

66) Plaintiff advised him that this is a lie. Plaintiff was never convicted of any criminal charges, nor was he given any disciplinary charges for these accusations. He said to put it in the statement. Plaintiff did. EXH. I

67) Per A.D. 05.12.101 "Administrative Detention Placement" policy, Section I. Policy states:   The Dept. shall ensure the use of A.D. only to house those individuals in custody who pose the greatest threat to the safety and security of the correctional facility and cannot be managed safely in general population. A.D. is reserved for those individuals in custody whose violent, disruptive, predatory or other serious misbehavior poses a serious threat to other inmates, staff or the orderly operation of the institution.

68) Defendants' knew they could not permissibly place Plaintiff into A.D. without allegations of violence. Plaintiff has only ever received ~~two~~ disc. tickets over (5) yrs. And these two tickets were orchastrated by Intel, in the last 90 days.

69) Plaintiff had a hearing on Dec. 20th, 2023. And was denied. He appealled. Denied. Grieved. Denied. No reason was ever given. Plaintiff thought if he just stayed out of trouble, he would be released. And a year later...

70) Plaintiff had (5) subsequent hearings. March 13th, 2024. May 29th, 2024. July 17th, 2024. October 2nd, 2024. December 12th, 2024. EXH J

28

71) Plaintiff attended every single hearing, except the last one.

72) Plaintiff submitted a written statement to all the hearings. The constant theme at each hearing and on paper, was Plaintiff did not understand why he was in A.D.? He did not do anything and there was no process to earn ones release.

73) The Regional Multidisciplinary Committee, (RMC), specifically the last (3) hearings, July 17th, Oct. 2nd and Dec. 12th, 2024. Were overseen by Def. Armstrong and Def. Lowre. Asst. Warden and Intel Regional Commander, respectively. Plaintiff informed them he did not understand why he was placed in A.D. He did nothing wrong.

74) Plaintiff first calls into question the validity of his "factual basis". How can Plaintiff offer meaningful rebuttal, against blantant lies. Plaintiff did not kill nor was involved with the death of a correctional officer. Plaintiff even provided exonerating evidence refutting this allegation. However, it has not been removed and the RMC does not appear to care. Plaintiffs history (discipline) is over 20 yrs. Plaintiffs allegations about gang-involvement are prejudical and without merit. The only allegations about drugs are all conjecture and speculation. Plaintiff was never charged with possession. Only with a trumpted-up conspiracy, that is unsupported by actual facts.

75) Furthermore, all statements made in the rationale, are no longer relevant, because Plaintiff was initially placed into A.D. in 2019, when he first arrived to IDoc. Plaintiff spent 2½ yrs. in A.D. without a single incident and released. Now, Def. Ottensmeier and Def. Lt. Bohnert are attempting to mislead the RMC by bolstering the rationale with old facts and not relevant. Which was previously used in first A.D. placement.

76) Plaintiff has procedural right to receive a "factual basis" and, if denied and placed in A.D. he has a right to a short notice of reason why the RMC, Defs Armstrong and Def. Lowre, denied him. So he can work on those misbehaviors. He didn't.

77) A.D. policy 05.12.101 (J) states that if the RMC deny Plaintiff, he should receive an "updated" copy of Doc 0432 (Rationale). However, Plaintiff has received (5) Notices since being placed in A.D. and (5) "updated" notices from the RMC. And every single one is identical to the very first initial placement form. EXH. J

78) The A.D. Hearings are a sham and perfunctory. The outcome is pre-determined. Def. Ottensmeier told Plaintiff without his approval, he won't go anywhere.

79) The procedural safeguards are not being properly adhered, and Plaintiff has been arbitarily and capriciously singled-out and falsely placed in A.D. for insufficient reason.

80) Plaintiff would like to establish for the record that IDOC houses appx. 36,000 inmates. The A.D. in Lawrence and Menard hold in total, under a 100 inmates. Thats appx. 0.50% of the entire population.

81) There are currently zero inmates in A.D. for a single drug conspiracy ticket. On the contrary, MCC segregation building houses under 500 inmates. And appx. 200 of them for drug charges. Yet, none are being placed in A.D. Except Plaintiff.

82) Furthermore, in Sept. of 2024, over 25 correctional officers claimed to have fallen ill, for alleged drugs in the facility. This triggered a state-wide massive sell search of the entire MCC facility. That resulted in over 45 inmates being placed in segregation for drugs / conspiracy to drugs.

83) But none were recommended or placed in A.D. The most extreme and isolated form of confinement, reserved for the worst of the worst.

84) Plaintiff, for (5) yrs was an exemplary inmate. Never received a single disc. ticket. Until plaintiff started making complaints / grievances, found himself in A.D.

85) Plaintiff currently lives with six other inmates in a small, isolated wing. Here, three inmates allegedly assaulted staff with a deadly weapon. One inmate allegedly killed his celly. And the other two allegedly have multiply assaults against other inmates. And Plaintiff is sitting here for an insignificant conspiracy ticket. But under the pretext, per Def. Ottensmeier and Def. Lt. Bohnert, of killing a correctional officer and prison riot. This false rationale, justifies Plaintiff's placement.

86) A.D. is synonymous with extreme isolation, even worse than segregation. Plaintiff is behind a solid metal door, and a closed food port, to reduce and minimize communication. All meals are taken alone in the Plaintiffs cell. No contact visits are permitted, and visits are reduced to half of general population.

87) Recreation is reduced to once or twice a month. Because shortage of staff, and A.D. always falls short, because A.D. requires extra officers for any movement.

88) Movement is greatly managed. Its not uncommon for Plaintiff to not come out his cell for 8-12 days straight. Showers constantly being cancelled. No human contact. And environmental and sensory stimuli are greatly diminished.

89) A.D. has already been determined and accepted in a class-action lawsuit as atypical and significant hardship. Plaintiffs duration is indefinite and has already been housed here for over a year. Davis v. Huges, 2017 U.S. Dist. LEXIS 34766

90) On July 17th, 2024, Oct. 2th 2024 and Dec. 12th 2024, Def. Armstrong and Def. Loure, were responsible for ensuring that Plaintiff received a fair, impartial and meaningful hearing. When Plaintiff expressed the validity of the rationale, and emphasized his lack of understanding as to why he's in A.D. They should of inquired indepht about Plaintiff's claims of innocence.

91) Def.s Armstrong and Loure both did not inquire into the old, decades old information, the same use of the previous notices' intel. They did not address Plaintiffs claims on how to get released or what was expected of him.

92) Def.s Armstrong and Loure, after recommending continued placement in A.D. for July 17th, Oct 2nd and Dec. 12th, 2024, never sent Plaintiff an updated version of the 0409 form, or provide a short reason why he was denied or what was used to keep Plaintiff. Therefore, for his appeal, he couldn't object or offer a rebuttal.

93) In addition, for July 17th and Oct 2nd, 2024 appeal, the chief of operations Justin Hammers denied Plaintiff, but informed him he could    grieve the denial. EXH. K

94) Plaintiff did grieve both those specific dates. But, contrary to the denial from Mr. Hammers and the A.D. policy, the grievance officer, with Def. Reicherts signed concurrence, denied Plaintiffs grieve on the one hand, but also stated, DR 504. 810 states, "grievance procedures shall not be utilized for complaints regarding decisions that have been rendered by the Director, such as facility placement."... EXH. L

95) That statement implies whether they wished to release Plaintiff or not, they did not have the authority, thereby rendering the process hollow and without merit. This conflicts with Plaintiffs constitutional rights for a ~~through~~ thorough appeal process.

96) Inmates Ruano and Butler will declare under penalty of perjury, they have been in A.D. for over a decade each, and have no means of release. Nor were they ever given a reason for continuous denials. EXH. S

97) Because of the isolation, lack of yard, no out of cell time. The reduced environmental stimulation has lead to emotional flatness, aggressive fanasties, perceptual distortions, confused thought process, mood swings, and feelings of depression and sadness. The deterioration is slowly increasing.

31

<u>MEMORANDUM OF LAW</u>
In Support of Count II

After <u>Sandin v. Conner, 515 U.S. 472</u>, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves in relation to the ordinary incidents of prison life. Thus, the <u>Sandin</u> standard requires the courts to determine if assignment to A.D. "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," <u>at 484</u>.

In <u>Isby v. Brown, 856 F.3d 508,524 (7th Cir. 2017)</u> (Although prisoners do not have a constitutional right to remain in general pop., both the duration and conditions of the segregation must be considered to determine whether due process is implicated).

Plaintiff has been in A.D. for over a year, with no end in sight.

Plaintiff's conditions are some of the harshest within IDOC and a current class-action for IDOC-AD has already determined that AD imposes atypical and significant hardship.

Once a liberty interest has been established, the court turns to the question of what process is due for an inmate placed in AD.

In <u>Wilkinson v. Austin, 545 U.S. 209</u>, the Court adopted the framework established in <u>Mathews v. Eldridge, 424 U.S. 319</u>, which requires consideration of three distinct elements.

Plaintiff will focus on the 2nd element, which addresses the risk of an erroneous placement under procedures in place. The <u>Wilkinson</u> court, established and repeated on numerous occassions the importance to provide inmates with a brief summary of factual basis. The vital importance of providing the pending review committee with "facts", is critical to a fair and impartial hearing. If the summary contains intentional misinformation and speculation of unproven theories, then plaintiff is already doomed.

Also, the <u>Wilkinson</u> court <u>at 226</u>, stated if the recommendation is AD placement, then policy requires that the decisionmaker provide a short statement of reasons. This requirement guards against arbitrary decisionmaking while <u>also</u> providing the inmate a basis for objection before the next decisionmaker or in

32

MEMORANDUM OF LAW
In Support of Count II

a subsequent classification review. The statement also serves as a guide for future behavior. See Greenholtz v. Inmates Nebraska, 442 U.S. 1, 16.

Plaintiff has never received a reason why he was denied, or what he needs to do or change his behavior, despite his specific requests for exactly that.

The Isby court, at 527, explained that "a meaningful review is one that evaluates the prisoners current circumstances and future prospects and considering the reasons for his confinement determines whether placement remains warranted. The court also criticized using uninformative or boilerplate reasons as a pretext to keep inmates indefinitively; or notices that are rote and that repeat years old intelligence.

Plaintiff has clearly demonstrated that Defendants are using the exact same notice for the last year, based on old intelligence. And Plaintiff has never received a single reason why he's been denied or how to change behavior to secure release. Def. Armstrong and Def. Lowre.

"The record shows, what seems pretty obvious, that isolating a human being from other human beings year after year or even month after month can substantially cause psychological damage, even if the isolation is not total." Davenport v. De Robertis, 844 F.2d 1310 (7th Cir) at 1313

33

## COUNT III

Plaintiff's procedural Due Process rights under the ~~Fourteenth~~ Amendment to the United States Constitution are being violated, based on a disciplinary hearings failure to adhere to standard procedural safeguards. Plaintiff hereto incorporates all asserted factual allegations in Count I and II.

98) On Dec. 18th, 2023, Plaintiff received a notice that he was being placed into A.D., in large part for a pending disciplinary ticket. EXH. B

99) Plaintiff was moved into A.D. And on Dec. 19th, 2023 Plaintiff received a disc. ticket for 601/203. Conspiracy for drugs.

100) A.D. is IDOC's highest, securest and most extreme solitary confinement unit within the Dept. At the date of this complaint, Plaintiff is still in A.D. because of the ficticious ticket. The harsh conditions of A.D was previously detailed in Count I.

101) The disc. ticket alleged after an investigation by Intel, Plaintiff was for "attempting to, or receiving drugs into the facility". And (3) Confidential Sources (C.S) have identified him as the source of distributing drugs. EXH. C

102) No excepts were provided. No dates. No times. No places. Not a single piece of evidence was provided, for Plaintiff to refute or offer a defense.

103) Plaintiff is not guilty of the false allegations from Intel. And just spent the last 90 days in the Restrictive Housing unit. Where movement, mail, visits are all limited, restrictive and heavily monitored.

104) Dec. 22nd, 2023, Plaintiff had his disciplinary hearing, with the Chairman, of the Adjustment Committee, Def. Lt. Schoenbeck. The Def Lt Schoenbeck asked how Plaintiff pleads. Plaintiff replied, "he wasn't clear what he's done"? Def. told him like the ticket says.

105) Plaintiff says, "this is ridiculous, he did not do anything and the ticket is vague and does not give any incriminating evidence". Plaintiff adds, "what are the C.S's saying in general terms"? Def. Lt. schoenbeck replies, "he can't say because he hasn't read their statements, and the ticket is sufficient enough".

106) Plaintiff was found guilty and received the final summary on March 9th, 2024. See EXH. M

107) This final summary, substantiates Plaintiff's claims. Plaintiff also accepts

34

COUNT III

an unavoidable truth that C.S's have to be protected. However, when the usual safeguards of an adversary procedure are unavailable it is all the more imperative that other safeguards are emphasized, here there were none.

108) The investigating officer did not testify or swear to the truth of his report.

109) The C.S.' reliability was not established before the info was used.

110) Def. Lt. Schoenbeck did not independantly confirm or even read the alleged testimony of these C.S.'s

111) Def. Lt. Schoenbeck told Plaintiff he did not have their statements or know what they said. And just because there are multiply C.S. does not in itself, self-validate what they said.

112) Def. Lt. Schoenbeck stated in his summary, "committee (Lt. Schoenbeck) finds the information provided by the C.S. to be reliable based upon verification from Intel."

113) Def. Lt. Schoenbeck just admitted that he did not confirm the information personally, (the evidence from the C.S.'s) he asked the same investigating office, to validate his own report. That flies in the face of an adversary procedure, and becomes an inquisitorial one.

114) Plaintiff received a disciplinary ticket, making blanket assertions of some form of drug distribution, by several c.s.' The ticket contained not a scintilla of evidence, testimony or any tangible facts for Plaintiff to defend against.

115) Def. Lt. Schoenbeck, could also not elaborate or clarify the allegations. Not 'cause he couldn't for fear of C.S.'s safety, but because the material/statements were not apart of his report. And simply relied upon the self-validating verification from the same officers who compiled the report.

116) This procedural process · denied Plaintiff his due process rights. And was wrongly convicted and subjected to long-term, indefinite Admin. segregation.

117) Plaintiff would establish for the court, officer Charles J. Rayford was present and possibly apart of the Adjustment Committee, but he neither spoke, had access to any paperwork in front of him and appeared disinterested in the proceedings.

118) It seems Menard has an unofficial policy to require that a 'token minority' be present on the committee to present an image of impartiality.

35

119) Because of this specific ticket, Plaintiff was placed in Administrative Detention. The highest level of security, with extreme forms of solitary confinement. And is well established to impose atypical and significant hardship compared to ordinary incidents of prison life.

120) Plaintiff has been subject to these extreme hardships for over a year.

121) And at every A.D. hearing, they use the disc. ticket to justify and keep Plaintiff in A.D.

# MEMORANDUM OF LAW
## In Support of Count III

For a procedural due process claim, an inmate must prove that "(1) he has a liberty interest that the state has interfered with; and (2) the procedures he was afforded upon that deprivation were constitutionally deficient." Scruggs v. Jordan, 485 F.3d 934 (7th Cir. 2007).

In Sandin v. Conner, 515 U.S. 472, in order to prove a state-created liberty interest, in regards to conditions of confinement, the court looks to duration and severity of those conditions.

Plaintiff, has established that his placement in A.D. evolved from the disc. ticket in contention here. And that same disc. ticket is still used against him. Plaintiff has endured these indefinite conditions for over a year. And has previously addressed the extreme, atypical and significant hardship these conditions impose in Count II.

Plaintiff has satisfied the first element of the procedural due process standard under Sandin.

Plaintiff claims Def. Lt. Schoenbeck failed to provide adequate due process in several different ways. (1) He failed to adequately explain the reasons for finding Plaintiff guilty in the Final Summary. (2). No evidence was noted that could possibly support its conclusion. (2) He erred in deeming the C.S. reliable. (3) He inappropriately relied on an investigative report that was under oath.

In Mendoza v. Miller, 779 F.2d 1287 (7th Cir 1985), the court established the reliability of the confidential information through a number of different routes. (1) "the oath of the investigating officer as to the truth of his report containing C.S. and his appearance before the committee; (2) corroborating testimony; (3) statement on record by chairman of disc. committee that he had first hand knowledge of the sources and considers them reliable; (4) in camera review of material documenting the investigator's assessment of credibility of C.S. info." at 1293

In McCollum v. Miller, 695 F.2d 1044 (7th Cir. 1982), the Honorable and esteemed Judge Posner, eloquently pointed out that, that the essential information needed to prepare petitioners defense was the time and place of each alleged

37

## MEMORANDUM OF LAW

In support of Count III

In order to establish a state-created liberty claim for a due process violation, pursuant to Sandin v. Conner,

act of extortion. However, such details would have tipped him off to the names of all or most informants. Such a tip-off could be lethal.

Therefore, the costs outweigh the benefits... of preparing an effective defense. But without such Notice the adversary hearing so prized in American procedure is likely to have little meaning. The inmates will not Know what the evidence is against them, and unable to counter it with their own evidence. The disciplinary proceeding will be inquisitorial.

But if the usual safeguards of an adversary procedure are unavailable it is all the more important that there be other safeguards.

Plaintiff, was not given any times, places or dates of any alleged conspiracy to distribute drugs; and could not properly mount a defense. Nor, were any other safeguards provided.

Again, the Honorable Judge Posner stated, "even if the report of the investigating officer is persuasive in its detail, (Plaintiffs was absolutely not) but an investigative report, however vivid and apparently true, IS NOT, self-validating".

The investigator was not called as a witness, although I.D. was not confidential. He was not asked to swear to the truth of the report. None of the C.S.'s testified before, or interviewed by Inst. Disc. Committee. Nor did the committee vouch for the credibility of investigator or CS's at 1049 supra.

All of that is exactly identical to Plaintiffs claims.

## COUNT IV

Plaintiffs' First Amendment right for Freedom of Speech, to the United States Constitution, are being violated by the destroying, delaying, tampering and repeatedly harassing the incoming and outgoing mail. Plaintiff hereto incorporates all factual allegations asserted in Counts I, II, III.

122) On Sept. 21st, 2023 Plaintiff was escorted to the Restrictive Housing Unit in North 2. commonly referred to as Segregation, by the Intel Unit.

123) For the previous 4½ yrs., until his placement in segregation, Plaintiff never had any significant problems, delays or issues with his incoming/outgoing mail.

124) By the middle of Oct. 2023, Plaintiff routinly noticed a problem with his incoming/outgoing mail.

125) Nov. 1st, 2023 Plaintiff complained about this specific issue, along with several other issues to Maj. Hasemeyer. No reply

126) Nov. 10th, 2023, Plaintiff repeated the exact same complaint to Def. Reichert. No reply.

127) Dec. 18th, 2023, Plaintiff was again escorted by Intel, specifically Def. Ottensmeier, to an even more restrictive and repressive environment. A.D.

128) Def. Ottensmeier, personally and exclusively monitors, handles, picks-up and delivers all mail to inmates in A.D., as required by IDOC policy.

129) At this same time, Def. Ottensmeier had told Plaintiff, "you mess with me, I mess with you.￼

130) From Oct. 2023 to around May 2024. Plaintiff routinely would attempt to write his wife twice a week, every week. Averaging appx. 8-10 letters a month. However, only 3-5 letters would actually arrive. And when they did, they were excessively and consisently several weeks late, like 4-6 wks. late.

131) From Oct. 2023 to exactly May 7th, 2024. Plaintiff's wife wrote about 3 times a week. Averaging around 12-14 letters/cards/pictures every month. However, only 6-7 letters a month would actually arrive. And always out of chronological order. Also, consistently 4-6-8 wks. late.

39

132) From Oct. 2023 to May 2024, Plaintiffs wife would call Menards offices, every 2-3 weeks to complain. Mail Room. Counselor. Warden. Building Sgts. Intel. All would adamently deny any tampering or delaying, yet the next day Plaintiff would always receive a small package of letters. Always 4-6 wks late. Easily determined by the postmark.

133) Plaintiff complained numerous times, but it only made matters worse. See Count I.

134) Jan. 19th, 2024, Plaintiff received some Papers titled "Notification of Mail Scan Status" to sign. Advising him that because of a bogus ticket on Oct. 17th, 2023 (for a Pharmacy Tech. Exam pamphlet. All non-legal incoming and outgoing mail would be scanned. For 90 days. But all mail would be delivered in a timely manner. EXH. N

135) Ironically, Plaintiff never received a single piece of mail that was scanned after this notice. Nor was the notice ever renewed after the 90 days.

136) Plaintiff has already established in Count I, retaliation that there was an ongoing campaign against him, to harass and intimidate Plaintiff to stop complaining and filing grievances.

137) May 3rd, 2024. Def. Reichert permanently banned Plaintiffs wife without cause. Def. Lt. Bohnert and Def. Ottensmeier, both blocked Plaintiffs' wife from his tablets allowed email contacts. Against policy or without abusing the privilege; also, they both restricted her phone number from his approved ph. list. Again, without authority or violations of any regulations/rules.

138) May 7th, 2024, Plaintiffs' wife. having been banned from visits, video visits, emails and ph. calls, had no alternative form of communication except physical mail. Decide to begin writing every single day.

139) Which she documented digitally, by taking a photo of herself dropping letters into the U.S.P.S. dropbox. She mailed appx. 230 letters from May 7th to Dec. 31st, 2024. And appx. 120 letters came up missing. And what was delivered, 90% of the time, was extremely and repeatedly late by at least 3-4 wks.

140) Only durning the last month of Dec. 2024, has her letters came in a somewhat reasonable time.

141) Plaintiff has also not mentioned that for the last 8-9 months, he has received appx. 43 rejection notices for mail. For vague, non-exsistent reasons, i.e. unusual stains, marks, scents, material. However, when the letters arrived back, there was no discernable marks, stains, etc.

142) Plaintiff, at this point became defeated, discouraged and disheartened and from attempting to write. Plaintiff started writing only letter, once a week, from May 7th to Dec. 31st, 2024.

143) Plaintiff mailed appr. 60 letters between that time frame. And only about 40 letters made it. Also, when it did arrive it was out of order and 4-6 wks. late.

144) Plaintiff realized it was a concerted effort to strategically undermine and sabatoge Plaintiff's marriage, by completely disrupting, and destroying the intimacy of their communications, hoping to break up the sacred matrimony.

145) Because physical mail was the only available avenue for him to effectively communicate with his wife. And Def. Ottensmeier completely understood, and in fact orchastrated that specific fact. Def. Ottensmeier then began to play with Plaintiffs incoming and outgoing mail to such a degree, that communication, in the most meaningful way stopped existing. Because it became so distorted by missing letters, letters being extremely late, and consistently out of any sense of chronological order. There was no flow, no consistency, no asked and answered back and forth. It was completely demoralizing and not accidental or happenstance.

146) Plaintiff was also arbitrarily and capriciously blocked from writing (receiving or sending) emails to his wife, and was improperly blocked by Def. Ottensmeier. On May 3rd, 2024. Neither of them violated any rules or regulations. EXH. H

147) Plaintiff can proe the Defendants' state of mind and demonstrate the retaliatory and malicious intent behind their actions. For over a year, Intel, Menard, have claimed theres a huge drug problem, especially w/ with drugs allegedly being introduced into the facility via institutional mail. Hence Plaintiff being placed on "mail watch". This problem became so over-blown, that several congressmen from this region, introduced a House Bill 5893. It was "to protect the health and safety of committed persons, Dept. staff and its contractors. Provides that policy shall require that mail processed electronically shall be availably to inmates only through kiosk and tablet services."

148) If Plaintiff was thought to be illegally involved with drugs via institutional mail, which is exactly what the bogus disc. ticket from Dec.19th, 2023 said, and placing Plaintiff on mail watch.

149) Why "block" his email access to his wife, and force them to only use the institutional mail services? This defies logic and captures their true intent. Retaliate. Harass. Intimidate.

41

## COUNT V

Plaintiff contends the permanent ban against plaintiffs wife, violates his substantive due process rights of the ~~Fourteenth~~ Amendment, or the First or Eight Amendment as applicable to the states through the Fourteenth Amendment. Plaintiff hereto incorporates the factual allegations as set forth in Counts I, II, III, IV.

150) As outlined in Count I, Plaintiff was enduring retaliatory problems with specific Intel members, on a consistent and progressive basis.

151) Plaintiff had mailed a letter to Director L. Huges, detailling and strongly criticizing Intel's behavior and unprofessional tactics. This letter was sealed and mailed April 22nd, 2024. Which was opened and withheld by Intel. EXH. D

152) On April 22nd, 2024, Plaintiff mailed out a separate grievance to the Admin. Review Board, contesting the bogus disc ticket that formed the basis for his placement in A.D. EXH. E . Also opened and withheld.

153) On or about April 24th, 2024, Plaintiff instructed his wife to file an official complaint at Springfield, IDOC headquarters, in a concerted effort to bring attention to the retaliation, disc tickets, false placement in A.D.

154) On April 24th, 2024. Plaintiff sent out an email, to Affirmative Action, a IDOC watch group. To a Howard Moore. EXH. F

155) On April 30th, 2024. Plaintiff sent out another email to the same office, to a J. Delgado. Complaining of the same issues.

156) On May 3rd, 2024, Plaintiffs wife was notified that effective immediately, all her visits were permanently banned, per Def. Reichert. EXH. G No legitamate reason was proffered. Simply a vague and generalized statement: Ongoing investigation. Intel. This was from Def. Lt. Bohnert and Def. Ottensmeier.

157) Def. Reichert, also used to be a member of the closed knit Intel unit. This non-descript reason violates current Illinois law. 730 ILCS 5/3-7-2(f):
   "All institutions and facilities of the Dept. SHALL permit every committed person to receive in-person visits and video contact, except in case of abuse of the visiting privilege or when the chief Admin. officer determines that such visiting would be harmful or dangerous to the security, safety or morale of the institution."
   EXH. O

158) Plaintiff, nor his wife received any misconduct tickets, abuse of privileges, or

42

was accused of any rule violations. This action was clearly retaliatory. Plaintiff's visits were already non-contact, recorded and monitored. And Plaintiff did not even have a visit that day.

159) Furthermore, this permanent ban was only directed at Plaintiff's wife. No other visitors were banned. Nor did it effect Plaintiffs visits.

160) According to IDOC policy, 05.01.106 Admin Directive/Inmate visits, section 11(2) states " The following procedures shall apply regarding inappropriate behavior:"

> If it is determined that a temporary or permanent restriction is warranted, the CAO shall prepare a DOC 0409 to the visitor and inmate, outlining the incident... EXH P

161) The DOC 0409 form, has a designated box, with the word "Violations" next to it. Above that, it states" This letter shall serve as notice that your visiting privileges have been revoked as a result of the following violations that occured during the visit as specified below. EXH G

162) Inmate Florian Mulosmani, lost visits with his wife appx. 3yrs ago for very similar circumstances. Filing complaints/grievances against Intel for bogus disc. tickets. He lost his visit 3 yrs ago for investigation, and is still permanently banned. EXH. Q

163) What further compounds this retaliatory measure, is that Def. Lt. Behnert and Def. Ottensmeier simultaneously restricted Plaintiff's wife's ph. calls, emails and video visits. Then severly and intentionally destroyed, delayed or returned over 100+ letters from his wife. strategically undermining and eroding Plaintiffs only form of communication with his wife.

164) On May 13th and 26th, 2024, Plaintiff wrote Def. Reichert to complain about the harassment, retaliation and humiliation of these actions by staff. No reply.

165) On July 20th, 2024. Plaintiff received an emergency grievance back from Def. Reichert. Where Intel states, they are not conducting an investigation, that its over on their end. So Plaintiff wrote Def. Reichert again to have his visitation reinstated, since no misconduct violations or abuse of privileges were uncovered. No reply.

166) Def.s Reichert, Lt. Behnert and Ottensmeier have acted arbitrarily, capriciously and with deliberate indifference to single out Plaintiff and deprive him of

43

him of visiting, calling, emailing and properly corresponding with his legally wedded wife.

161) Plaintiff has suffered severe physical anguish, migrains, stomach cramps, loss of weight, stress, depression and humiliation of loosing his wife, being mocked and ridiculed.

168) The situation became so dire, that in June 19th, 20th, Intel officer Adam Puckett called the local police dept. to peiform a welfare check on Plaintiff's wife.

169) On or about Aug 16th/19th,2024, Plaintiff saw Def. Reichert on the yard outside, and was able to briefly converse with him. Plaintiff immediately asked him why he took my visits. Def. Reichert initially stated,"who are you?"

170) Plaintiff replied,"Pedro Chairez". Def. Reichert then said,"Oh yowre the couple who constantly complain and harass my staff."

171) Plaintiff replied," we didn't do anything to justify taking our visits".

172) Def. Reichert responded," you should of thought about that before you starting making complaints against my staff." And he walked away.

173) On Nov. 2nd, 2024. Plaintiff and his wife both resubmitted request to have their visits reinstated.

174) Nov. 19th, 2024 Def. Reichert responded, denying the request. No reason or explanation was provided. EXIT. R

175) The Defs Reichert, Lt. Bohnert and Ottenmeier are unnecessarily and wantonly inflicting pain. It's antithetical to human dignity to specifically target a persons wife, and completely and strategically try to cause harm to the sanctity of the marriage, or humilate him or degrade him.

176) An inmate, afraid to identify himself right now, but will submit an affivdavit under oath, that Def. Ottenmeier was laughing and telling him," you fuck with me, I will take everything you love from you, ask Chairez."

177) Plaintiff, nor his wife, ever broke any rules, violations, regulations or abused any privileges. These actions are purely retaliatory and done to single out and target Plaintiff. There are no penological interests here in these actions.

44

## MEMORANDUM OF LAW
### In Support of Count IV

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution. Hence, for example, prisoners retain the constitutional right to petition the government for the redress of grievances". Johnson v. Avery, 393 U.S. 483

Because prisoners retain these rights, 'when a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights' Procunier v. Martinez, 416 U.S. 396

The Supreme Court has stated that freedom of association is among the rights least compatible with incarceration. And some curtailment of that freedom must be expected in the prison context.

However, in Overton v. Bazzetta, 539 U.S. 126, 131, stated, "we do not hold, and we do not imply, that any right to intimate association is altogether termineted by incarceration or is always irrelevant to claims made by prisoners".

Unfortunately, they did not attempt to or needed to explore the asserted right of association at any length or determine the extent to which it survives incarceration, because the challenged regulations on its face value in Michigan, bear a rational relation to legitimate penological interests.

Plaintiff agrees with the general premise that withdrawling visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior. for temporary periods of time. Plus, still allowing ph.calls and letters.

The Bazzetta court closed their opinion by stating at 137, "If the withdrawl of all visitation privileges were permanent or for a much longer period, or if it were applied in an arbitrary manner to a particular inmate, the case would present different considerations".

Here, Plaintiff is presenting exactly that. Indefinite withdrawl of his wife's visit, without just cause and in an arbitrary manner, with no other means to communicate properly.

45

## V. REQUEST FOR RELIEF

A. Issue a Declaratory Judgement stating:

1. Defendants Ottensmeier, Bohnert and Reichert retaliated against Plaintiff violating his First Amendment rights.

2. Defendants Armstrong and Loure violated Plaintiffs Due Process procedures under the 14TH Amendment; and, violated Plaintiffs Eight Amendment right to be free from cruel and unusual punishments.

3. Defendant Schoenbeck violated Plaintiffs Due Process rights under the Fourteenth Amendment, for improperly finding him guilty.

B. Issue an Injunctive Order against Defendants Ottensmeier, Reichert, Bohnert.

1. Immediately stop tampering with Plaintiffs mail

2. Stop Retaliating against Plaintiff for exercising 1st Amend. Rights

3. Immediately reinstate Plaintiffs visitation rights with his wife

4. unblock Plaintiffs wife from the prison tablet

5. Remove Plaintiffs wife from the restricted phone list

6. Release Plaintiff from A.D.

C. Issue an Injunctive Order against Defendant Warden Reichert.

1. Immediately reinstate Plaintiffs visit with his wife

2. Instruct Intel to stop harassing and retaliating against Plaintiff

3. Release Plaintiff from his illegal confinement in A.D.

4. Transfer Plaintiff to another facility

46

D.  Issue an Injunctive Order against Defendant Schoenbeck:

    1.  Expunge Disciplinary ticket

E.  Issue an Injunctive Order against Defendants Armstrong and Loure:

    1.  Immediately release Plaintiff from A.D.

F.  Award Nominal damages against all Defendants

G.  Award Compensatory damages against Defendants Ottensmeier, Bohert, Reichert

    1  50,000 for the physical pain, humiliation and emotional trauma by organizing and retaliating against Plaintiff, by taking his wife's visits, emails and ph. calls., mail and retaliatory behavior

    2.  50,000 for the intentional placement in A.D., to retaliate against Plaintiff who suffered physical pain, humiliation and psychological injury.

    3.  50,000 for the loss of a year's worth of mail from his wife, incoming and outgoing.

H.  Award compensatory damages against Defendants Schoenbeck, Armstrong, Loure:

    1.  For improperly finding him guilty on a bogus disciplinary ticket 10,000.

    2.  50,000 for repeatedly and continued placement in A.D. despite an obvious and blatantly misleading rationale. Plaintiffs conduct, did not warrant placement. Which caused physical pain, embarrassment and psychological injury

I   Award punitive damages against Defendants Ottensmeier, Bohnert, Reichert

    1.  100,000 for their retaliatory actions against Plaintiff, with respect

47

to sabotaging Plaintiff's marriage, by banning visits, ph. calls, emails and mail. And placement in extreme isolation without cause.

J. Award Punitive damages against Def. Schoenbeck, Armstrong and Lowre:

    1. For violating Plaintiffs due process rights for an obviously manufactored disciplinary ticket, with no evidence. $20,000

    2. 50,000 for placing Plaintiff, with an almost exemplary disciplinary record, in IDOC's most extreme, severe solitary confinement, without proper due process

K. All costs and appropriate attorney fees

L. Grant such ~~relief~~ other relief as it may appear that Plaintiff is entitled to

48

V.    **REQUEST FOR RELIEF**

State exactly what you want this court to do for you.  If you are a state or federal prisoner and seek relief which affects the fact or duration of your imprisonment (for example: illegal detention, restoration of good time, expungement of records, or parole), you must file your claim on a habeas corpus form, pursuant to 28 U.S.C. §§ 2241, 2254, or 2255.  Copies of these forms are available from the clerk's office.

*\* Addressed previous pages. \**

VI.    **JURY DEMAND** (*check one box below*)

The plaintiff ☒ does    ☐ does not request a trial by jury.

## DECLARATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 11

I certify to the best of my knowledge, information, and belief, that this complaint is in full compliance with Rule 11(a) and 11(b) of the Federal Rules of Civil Procedure. The undersigned also recognizes that failure to comply with Rule 11 may result in sanctions.

Signed on:    Jan 13ᵀᴴ, 2025
              (date)

_____
Signature of Plaintiff

MCC Box 1000
     Street Address

Pedro Chairez
     Printed Name

Menard, IL 62259
     City, State, Zip

Y. 35814
     Prisoner Register Number

N/A
Signature of Attorney (if any)

Rev. 10/3/19

49

## EXHIBIT INDEX

A. Edwin Lao "Email"

B. Notice for A.D. Placement

&ast; C. Disciplinary Ticket 12/19/23 (front/back)

&ast; D. Latoya Hughes letter 4/22/24 (front/back)

E. Disc. Appeal 4-22-24, denial from ARB attached (3 pgs)

F. Complaints to Howard & Delgado; Affirmative Action (mailed separate)

G. May 3rd, 2024, Permanent Ban visitation

H. Terms and Agreement for IDOC emails.

I. First A.D. hearing statement 12-20-2023 (5 pgs)

J. All A.D. Notices '5' different dates. (5 pgs)

K. Justin Hammers, chief of Operations. Permission to Grieve A.D. (2 pgs)

&ast; L. Grievance, denying the ability to grieve. A.D. (front/back)

&ast; M. Disc. 12/19/23 "Summary" (front/back)

N. Mail Scan Notice (2 pg)

O. 730 ILCS 5/3-7-2 (f)

P. Visitation Policy 05.12.106

Q. Declaration by F. Mulosmani

R. Reichert Nov. 19th, 2024 Denial for reinstatement visits

S. Declaration by Butler and Ruano A.D. indefinite (2 pg)

&ast; Both sides please e-file properly &ast;

This note is for the PRISON LAW LIBRARY CLERK



EXHIBIT

A

# Inmate Pedro Chairez

From:  Edwin Lao (elao@azadc.gov)

To:  don_bailey2000@yahoo.com

Date:  Tuesday, September 5, 2023 at 05:21 PM MST

Good Afternoon

We have received your email regarding your son Perdo Chairez. I have been tasked to respond to your email on behalf of ADCRR.  You had expressed  concerns with  your son's current out of state placement, conditions of confinement, and proximity to his family.  The original decision to place your son out of state was based on his involvement with activities that were deemed detrimental to the safe and orderly operations of ADCRR facilities.

While your son was under the custody of the  Delaware Department of Corrections it was again deemed necessary to move him  to the Menard Correctional Facility in Illinois because of  his continued involvement in activities that were a detriment to their security operations.

While ADCRR is  sensitive to your wishes, we believe that his return back to ADCRR will adversely impact our facility operations.

We have also made  contact with the Illinois Department of Corrections regarding the concerns and issues you have brought forward relating to his conditions of confinement. According to the Menard Correctional Facility Warden, your son is not confined to his cell 24 hours a day.  He is afforded a cumulative total of 10 hours of out of cell time afforded to him at separate days of the week for phone calls and recreation.

He is also housed in a cell with an open cell front (bars) and fans to promote   circulation and air flow. He is also provided ice and water free of charge if the heat index goes beyond 86 degrees.

If you have any further questions or concerns feel free to contact ADCRR.

Thank You,

Ed Lao
Arizona Department of Corrections
Security Operations Administrator

This email contains information that is intended only for the person(s) to whom it is addressed. If you received this communication in error, please do not retain it or distribute it and notify the sender immediately



EXHIBIT

B

Illinois Department of Corrections
**Notice of Administrative Detention Placement Review**

{ MENARD }
A.D

# This document shall serve as notice of your upcoming review for placement in Administrative Detention by the Administrative Detention Review Committee.

| Pedro CHAIREZ | Y35814 | Menard CC |
|---|---|---|
| Individual in Custody Name | ID # | Facility |

**Review Type:**   ☒ Initial Review (Opportunity to be present)

☐ Follow-up Review:    ☐ Opportunity to be present    ☐ File Review

**Review Date:** Your Administrative Detention Placement Review will take place on Dec 20, 2023 .

This review will be for:   ☒ Initial Placement in Administrative Detention    ☐ Continued Placement

☐ Transfer from Restrictive Housing

**Notice of Administrative Detention Placement Rationale:** In order to prepare you for your Administrative Detention placement review, you are advised that the Department's rationale for your prospective or continued placement in Administrative Detention is based upon the following reason(s):

Pedro "PISTOL PETE" CHAIREZ Y35814 was received into IDOC custody on 4/11/2019 following his involvement in a Delaware Prison riot and hostage situation that resulted in the murder of a correctional lieutenant. While in custody in Delaware DOC, CHAIREZ had a disciplinary history that consisted of Dangerous Contraband, Disobeying Direct Orders, Assault, Falsifying Evidence, Abuse of Privileges, Unauthorized Communication, Threats and Intimidation, and Creating a Health / Safety / Fire Hazard. CHAIREZ has an MSR date of 5/21/2033 and is serving time for the charge of 2nd Degree Murder and his involvement/leadership within the Mexican Mafia while he was housed in the Arizona Department of Corrections resulting in him being charged with two counts of Criminal Street gang activity and Money Laundering. CHAIREZ has been identified as allying with the Latin Kings STG since being housed in IDOC. CHAIREZ was transferred to Menard C.C. on 12/28/2021 following his release from his previous Administrative Detention Placement (Prev. AD Placement 6/4/2019 to 12/28/2021). Since being housed at Menard C.C, CHAIREZ has been identified by multiple confidential sources as introducing Methamphetamine and other narcotics into the Institution. Approximately 44 grams of Methamphetamine recovered by Security Staff in 2023 have tied back to CHAIREZ. On 9/21/2023 during a search of CHAIREZ's assigned cell staff discovered a homemade screwdriver capable of removing the hollowed-out coat rack found in the cell, a laminated pamphlet which determined the chemical breakdown of prescription pills along with a key for coded messages to identify multiple types of drugs, cell phones/chargers, monetary amounts, what type of mail was being sent and different cell phone providers. Staff also discovered in CHAIREZ's property box multiple hard back book covers which had been removed from the books and appeared to have been peeled apart as if to remove something that had been concealed in the book covers. It should noted that all of the 44 grams of Methamphetamine recovered tying back to CHAIREZ were found either concealed inside of an altered box or hard back book binding similarly to the altered books recovered in CHAIREZ assigned cell. CHAIREZ is pending disciplinary for the recovered narcotics. It is the recommendation of Menard C.C. to place Individual in Custody Pedro CHAIREZ Y35814 in Administrative Detention to ensure the Safety and Security of IDOC.

Copies of the following identified documents relied upon by Department administrators that may subject you to Administrative Detention Placement, or continued placement, are attached to the Notice; however, portions may have been redacted based upon a finding that disclosure would compromise security or safety:

| Pedro CHAIREZ | Y35814 | Menard CC |
|---|---|---|
| Individual in Custody Name | ID # | Facility |

**Description and Purpose of the Review:** Pursuant to Administrative Directive 05.12.101, individuals in custody shall be afforded: initial Administrative Detention placement reviews; 90-day reviews of their on-going Administrative Detention placement; and a placement review if the individual in custody may be subject to Administrative Detention placement prior to the end of his or her restrictive housing status. Once placed in Administrative Detention status, every individual in custody will be subject to a 90-day review by the Administrative Detention Review Committee (Committee). You may appear personally in front of the Committee at their initial Administrative Detention placement review and every 180 days thereafter, if applicable. If your upcoming review affords you the opportunity to personally appear, the type of review will be marked at the top of the form: "Opportunity to be present".

In practice, this means that once an individual in custody is afforded the opportunity to personally appear at the Committee placement review, and if his or her placement in Administrative Detention is continued, he or she will receive another file review (not in-person) by the Committee in 90 days. If placement in Administrative Detention is continued at the time of the file review, the individual in custody will be afforded the opportunity to again personally appear at the next 90-day review. This sequence of 90-day reviews will continue as long as the individual in custody is determined to be appropriately placed in Administrative Detention status. Individuals in custody in Administrative Detention who have received this notice of Committee placement review may submit written statements and documents two days in advance of the review. If the notice is for the opportunity for an in-person review, the individual in custody may also present written statements and documents to the committee two days in advance of the review, in addition to the opportunity to personally appear to provide oral statements.

At the time of your review, the Committee will examine if your placement in Administrative Detention and your status is appropriate and within the guidelines and considerations in Administrative Directive 05.12.101. Upon conclusion of the review, the Committee will prepare a written report and recommendation concerning the review of your status to the Warden of your facility. The Warden and/or Deputy Director will then approve or disapprove the Committee's recommendations and render a decision on your future placement. You will be informed in writing of the decision within 30 days of the Committee review date. You will be permitted the opportunity to appeal the Committee's decision by checking the box below: "I wish to appeal the Committee's decision on placement into Administrative Detention".

**I certify that I have received the attached Notice of Administrative Detention Placement Review on this date.**

| | |
|---|---|
| Individual in Custody Signature | Date |

This section is only for individuals in custody who are afforded the right to attend the review in-person at the top of this form and wish to waive their right to attend in-person at their review date:

"I hereby acknowledge my right to personally attend the in-person review and knowingly and voluntarily waive my right to appear. I understand that I will be allowed to submit written statements and documents to the Committee for consideration two days prior to the review date but choose not to have the opportunity to personally attend and provide oral statements."

| | |
|---|---|
| Individual in Custody Signature | Date |

☐ Individual in custody refused to sign receipt.

**Deputy Director Decision:**   ○ I concur with the Committee's recommendation for Administrative Detention placement.

○ I do not concur with the Committee's recommendation for Administrative Detention placement.

I have been provided notice of the Committee's final decision on Administrative Detention placement.

| | |
|---|---|
| Individual in Custody Signature | Date |

☐ Individual in custody refused to sign.

| | | |
|---|---|---|
| Print Name of Staff Serving Notification | Signature of Staff Serving Notification | Date |



EXHIBIT

C

Count III

ILLINOIS DEPARTMENT OF CORRECTIONS
**Disciplinary Report**

**Type of Report:**
☑ Disciplinary    ☐ Investigative

Facility: Menard Correctional Center      Date: 12/19/2023

Name of Individual in Custody: PEDRO CHAIREZ    ID #: Y35814    SMI: ☐ yes ☑ no    Race: Hispanic

Observation Date: 12/19/2023    Approximate Time: 8:00    ☑ a.m. ☐ p.m.    Location: Internal Affairs

Offense(s): DR 504: 601 to 203: Conspiracy to Drugs and Drug Paraphernalia, 601 to 308: Conspiracy to Contraband

**Observation:** (NOTE: Each offense identified above must be substantiated.)

On Tuesday December 19, 2023 at approximately 8:00 am, I C/O SCHANZ, J. #11545, am issuing this disciplinary report to Individual in Custody PEDRO CHAIREZ Y35814 upon the conclusion of an investigation that was concluded on today's date. The investigation was being conducted in an attempt to identify Individuals in Custody who may be attempting to, or receiving drugs and drug paraphernalia through institutional mail and distributing them to other individuals in custody. During the course of the investigation interviews were conducted at which time three confidential sources (name and numbers being withheld for the safety and security of the institution, but deemed reliable due to the consistency of their statements) identified PEDRO CHAIREZ Y35814 as being a source of distributing drugs, specifically methamphetamine throughout Menard Correctional Center. Due to the serious

**Witness(es):** C/O GEARHART 3374

☑ Check if Disciplinary Report Continuation Page, DOC 0318, is attached to describe additional facts, observations or witnesses.

| Reporting Employee (Print Name) | Badge # | Signature | Date | Time | |
|---|---|---|---|---|---|
| J. SCHANZ | 11545 | | 12/19/2023 | 8:00 | ☑ a.m. ☐ p.m. |

**Disciplinary Action:**

**Shift Review:** ☑ Temporary Confinement    ☐ Investigative Status    Reasons: _Nature of offenses_

Printed Name and Badge # _____    Shift Supervisor's Signature _____    Date: 12-19-23
(For Transition Centers, Chief Administrative Officer)

**Reviewing Officer's Decision:** ☑ Confinement reviewed by Reviewing Officer    Comment: _NATURE OF OFFENSE_

☑ Major Infraction, submitted for Hearing Investigator, if necessary and to Adjustment Committee
☐ Minor Infraction, submitted to Program Unit

MAJ. S. GEE    570
Print Reviewing Officer's Name and Badge #    Reviewing Officer's Signature    Date: 12/19/23

☑ **Hearing Investigator's Review Required** (Adult Correctional Facility Major Reports Only):

M. SEVERS #65608
Print Hearing Investigator's Name and Badge #    Hearing Investigator's Signature    Date: 12-20-23

Procedures Applicable to all Hearings on Investigative and Disciplinary Reports

---

ILLINOIS DEPARTMENT OF CORRECTIONS
**Disciplinary Report Continuation Page**

## Menard Correctional Center
Facility

☑ Disciplinary Report    ☐ Investigative Report    ☐ Disciplinary Summary    ☐ Adjustment Committee Summary

Report/Incident Date: 12/19/2023    Incident # (if applicable): _____

**Individual in Custody Information:**
Name: PEDRO CHAIREZ    ID #: Y35814

willingness to introduce and distribute methamphetamine. PEDRO CHAIREZ Y35814 is being issued this disciplinary report for violating Departmental Rules 504A; 601 to 203; Conspiracy to Drugs and Drug Paraphernalia, and 601 to 308; Conspiracy to Contraband. PEDRO CHAIREZ Y35814 was identified by Institutional Graphics and Offender 360. E.O.R.

Page 2 of 2

Distribution: Master File, Individual in Custody

Printed on Recycled Paper

DOC 0318 (Rev. 7/2021)

EXHIBIT

D

To: Director, Latoya Hughes
From: Pedro Chairez Y35814
Date: April 21st, 2024
RE: Harassment/Retaliatory Behavior

Director Hughes,

    I am requesting an independant investigation to my improper and unjustified placement back into Administrative Detention (A.D.).

    I am an Interstate Compact transfer. Upon my initial arrival, I was classified to Pontiac's A.D. where I did appx. 2½ yrs in that status. I received zero tickets or any incidents.

    I was transferred to Menard. I did two (2) yrs. in the same cell, w/out any issues. My aggression level was a low-3. I was classified to Medium custody. (But had a hold). Excellent repoir with staff.

    Then I complained about the conditions. And within 2 wks., I was targetted for a NOT-random shakedown. Placed in seg for investigation.

    Then I received a dangerous contraband ticket for a tiny 1½ inch, commissary-sold nailclipper. which was not broken, nor sharpened. Retaliation based.

    After 89 days in Seg, w/out any seg cuts, and the day before I was supposed to get out, I was placed in A.D. and given a bogus conspiracy ticket for drugs. (Still awaiting ARB for appeal decision) This ticket was obviously manufactured There is no facts; how, what, when, where, why. Just I conspired

by myself. And apparently 3 C.I.s are aware of this.

Now, my A.D. rationale is a continuation of this absurd storyline. First, they lie, blantantly about me being directly involved in a riot and death of an officier. I have no criminal charges for that allegation. I never rec'd any disciplinary reports for that incident. This was never alleged in my Pontiac A.D. rationale. I was exonerated for that incident. Second, all the disc. tickets they mention are for the 90's r early 2000's.

Over the last 5 yrs. in IDOC, I have ZERO assaults, fights, weapons, threats or any gang/violent behavior.

The A.D. policy specifically states, the purpose of A.D. is to house the most violent, dangerous, aggressive and predatory offenders.

In the 5yrs in IDOC, I've had zero tickets until recently. I did 2½ yrs. in A.D. already for the behavior alleged in my rationale. To place me back into A.D. for the exact same circumstances is double jeopardy and an abuse of discretion.

I've enclosed several exhibits to prove my case. I have also grieved and addressed this issue at my A.D. hearings, to no avail. Cases like mine, only bolster the attorney's caseload in their class-action against IDOC A.D.

Please take a look into my accusations.

Thank you for your time

Pedro Chairez



ILLINOIS DEPARTMENT OF CORRECTIONS
**RESPONSE TO INDIVIDUAL IN CUSTODY'S GRIEVANCE**    N2-B-6

| Grievance Officer's Report | | |
|---|---|---|
| Date Received: 12/28/2023 | Date of Review: 04/16/2024 | Grievance #: K4-1223-2304 |
| Individual in Custody Name: Chairez, Pedro | | ID#: Y35814 |

**Nature of Grievance:**

Disciplinary Report dated 12/19/2023 issued by J. Schanz for 601. Conspiracy/203 Drugs and Drug Paraphernalia; 601.Conspiracy/308 Contraband/Unauthorized Property; 202302594/1-MEN

**Facts Reviewed:**

Individual in Custody submitted a grievance dated 12/27/2023 regarding the above disciplinary report. He grieves that there is not a single word that substantiates the charges and it should be dropped.

Relief Requested - "Dismiss all charges; restore my visits and any all privileges I lost."

Grievance Office reviewed IDR, Ticket Summary, DR 504 procedures & contacted the Adjustment Committee and Investigations and Intelligence.

The Committee advised the hearing was in accordance with DR 504. Individual in Custody was permitted to make statements in his defense and the Individual plead not guilty stating "been in RH for 90 days, this is ridiculous" as noted on the final summary.

According to the disciplinary report written by C/O J. Schanz, upon conclusion of an internal investigation on today's date, the investigation was being conducted in an attempt to identify Individual's in Custody who may be attempting to or receiving drugs and drug parphernalia through the institutional mail and distributing them to other Individual's in Custody. During the course of the investigation, interviews were conducted at which time three confidential sources (name and numbers being withheld for the safety and security of the institution but deemed reliable due to the consistency of their statements) identified Chairez Y35814 as being a source of distributing drugs, specifically methamphetamine throughout Menard Correctional Center.    CONTINUED ON BACK----------->>

**Recommendation:**

Based upon a total review of all available information, and a compliance check of the procedural due process safeguards outlined in Departmental Rule 504, this Grievance Officer recommends the Individual in Custody's grievance be DENIED.

| J. Guetersloh - Correctional Counselor 1 | Jacob Guetersloh   Digitally signed by Jacob Guetersloh Date: 2024.04.16 13:01:38 -05'00' |
|---|---|
| Print Grievance Officer's Name | Grievance Officer's Signature |

(Attach a copy of Individual in Custody's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response | | |
|---|---|---|
| Date Received: 04/16/2024 | ■ I concur   ☐ I do not concur | ☐ Remand |

**Action Taken:**

| Anthony Wills | Digitally signed by Anthony Wills Date: 2024.04.16 15:42:05 -05'00' | |
|---|---|---|
| | Chief Administrative Officer's Signature | Date |

| Individual in Custody's Appeal To The Director | |
|---|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must, within 30 days after the date of the Chief Administrative Officer's decision, be received by the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response if applicable, and any pertinent documents.)

| | | |
|---|---|---|
| Individual in Custody's Signature | Y35814   ID# | 4/22/24   Date |

RECEIVED

JUL 3 1 2024

ADMINISTRATIVE
REVIEW BOARD

Distribution:    Master File; Individual in Custody       Page 1       DOC 0047 (Rev. 9/2022)
Printed on Recycled Paper

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**RESPONSE TO INDIVIDUAL IN CUSTODY'S GRIEVANCE** (Continued)

CONTINUED -- Due to the serious negative side effects and life-threatening complications that methamphetamine brings and the willingness to introduce methamphetamine. Chain of Command Notified. Chairez Y35814 was identified by ID Card and Offender 360.

The 601 aiding and abetting, attempt, solicitation or conspiracy cannot be used by itself, but must accompany another charge as it is in this disciplinary report. The basis for discipline was clear in the report.

The Individual is no longer on disciplinary restriction and as of 04/11/2024 has been placed on Administrative Detention. Based on the nature of the charges and disciplinary history, the sanctions imposed by the Adjustment Committee are found to be correct as written and processed in accordance with DR 504. Disciplinary action shall remain as imposed.

38

LS

**Illinois Department of Corrections**
**Individual in Custody Grievance**

Pilot Program Only

Housing Unit: N2    Bed #: B-7

| Date: 12.27.23 | Individual in Custody (Last Name, First Name) (please print): Pedro Chairez | ID #: Y35814 | Race (optional): MEXICAN |
|---|---|---|---|

| Current Facility: MENARD | Facility where grievance issue occurred: MENARD |
|---|---|

**Nature of Grievance:**

☐ Staff Conduct
☐ Medical Treatment
☒ Disciplinary Report: 12/19/23  Menard
   Date of Report    Facility where issued

☐ ADA Disability Accommodation
☐ Restoration of Sentence Credit
☐ Dietary

☐ Personal Property
☐ Mail Handling

☐ PREA
☐ HIPAA

☐ Other (specify): _____

Note: Protective Custody denials may be grieved immediately via the local administration on the protective custody status notification.

ADA Coordinator Name (Print)    ADA Coordinator Signature    Date

Attach a copy of any pertinent document (such as Disciplinary Report, Search Record, etc.) and place in the designated locked receptacle marked "grievance":

- Counselor, unless the issue involves discipline, is deemed and emergency, or is subject to review by the Administrative Review Board
- Grievance Officer, only if the issue involves discipline at the current facility or issue not resolved by counselor
- Chief Administrative Officer, only if EMERGENCY grievance
- Mail to Administrative Review Board, only if the issue involves protective custody, involuntary administration of psychotropic drugs, issues from another facility, except medical and personal property issues, or issues not resolved by the Chief Administrative Officer

Date & Summary of Grievance (Provide information including a description of what happened, when and where it happened, and name or identifying information for each person involved):

I was improperly found guilty of a 601-203 conspiracy to distribute drugs and 601-308 conspiracy to contraband. There are several irrevocable deficiencies in these D.R. (1). Theres NOT a single word substantiating this charge and it should be dropped. (2) Theres a severe insufficiency of factual specificity for the 601-203 charge to allow me to effectively defend myself. There are ZERO "facts" in this vague D.R. who, what, where, when, how? All required to substantiate charge. (3) Pursuant to the ILCS 5/3-8-5, and the current Staff Training manual for Disciplinary Reports in 504's. A conspiracy

☐ EMERGENCY: Check only if grievance involves substantial risk of imminent personal injury or other serious or irreparable harm to self.
☒ Check if this is NOT an emergency grievance
☒ Continued on Reverse

**Relief Requested:**

Dismiss all charges; restore my visits and any all privileges I lost

_____
Individual in Custody Signature    Y35814    12/26/23
                                   ID #         Date

**Counselor Response (if applicable):**    Date Received: _____

☐ Outside jurisdiction of this facility. Send to: Administrative Review Board, PO Box 19277, Springfield, IL 62794-9277

Counselor Name (Print)    Counselor Signature    Date

Note to Individual: If you disagree with the counselor's response, it is your responsibility to forward grievance, with counselor's response, to the grievance officer.

| EMERGENCY REVIEW:    Date Received: _____ | Assigned Grievance #/Institution: K4-1223-2304 |
|---|---|
| Is this determined to be of an emergency nature: ☐ Yes, expedite emergency grievance. ☐ No, an emergency is not substantiated. Individual should submit this Grievance according to standard grievance procedure. | First Level Received: _____ Second Level Received MEN DEC 28 2023 Place File Stamp Here: |

Chief Administrative Officer Signature    Date

RECEIVED

JUL 31 2024

ADMINISTRATIVE REVIEW BOARD

____ Please check if using if utilizing follow up DOC0743p

Distribution: Master File, Individual In Custody    Page 1 of 2    DOC 0046 (Rev. Pilot Version only)

Illinois Department of Corrections
Individual in Custody Grievance

Pilot Program Only

charge requires the following protocol. How did I/M conspire? And with whom? Who were his co-conspirators? What were his actions? And it closes with a very powerful reminder.. "AN OFFENDER DOES NOT CONSPIRE ALONE". There's no mention of co-conspirators. I was the only person who received a D.R. (4). In MENDOZA V. MILLER, 779 F.2d 1287 (7th Cir) and adopted verbatim in the Training Manual, pg. 36, Confidential Sources. 3 ways to determine reliability. 1. Investigator has indicated, in writing and by his appearance before A.D. committee, the truth of his report. That did not occure. 2. Corroborating testimony such as statements from 'other sources'. One jailhouse informant cannot corroborate another jailhouse snitch. That's not the meaning of 'other sources'. This defies the law and intent of Miller/504. Jailhouse snitches are notorious for lying and dublicity, and willingness to appease their ink l masters, to obtain incentives, rewards or future favors.

Last, Insufficient written decision, lack of specificity + over-reliance on conclusory phrases, especially when my due process safeguards were bypassed because of the use of C.S., other safeguards become more necessary.. i.e.. more clarity + reasoning by the decision-making committee + hearing officer. Not dublicate repeating of report.

Punishment. C-grade should not be allowed. The contraband charge is not valid. And C-grade is not permissible for 203⁵. Also, the 6 month visit restriction violates 504.20 Disc. restrictions on visits shall be related as closely as practicable to the the abuse of the privilege. I didn't break any visit rules, actually, I was on day 89 in seg, when I rec'd said ticket. Also, Menard's Manual, under visits, says a 6-month restriction is only permissible for actual possession of illegal drugs. This is targetting my wife and myself, for our contact visits. This is the 2nd time, in 90 days, Officer J. Schune # 11545, has written tickets designated at hindering my visits.

Admin. Review Board -                    July 24th, 2024

   The following grievance enclosed is appx. 90 days late! However, not thru any fault of my own. I mailed this grievance out on April 22nd, 2024, with in proper timeframes.

   But, I am having an on-going issue with Intel tampering, opening, delaying and destroying my mail. This grievance was intentionally withheld for 90 days, then returned, claiming it was Postage Due. Which is a lie.

   I have grieved this specific issue, see #K4-0724-3225 to verify my claims. It's currently pending at 2nd level.

   I am re-submitting my Disciplinary grievance, (late) but like I said, not of my own doing. I hope this office will consider the extrordinary circumstances. and allow it to proceed. I am legally giving the state an opportunity to exhaust all remedies.
                        Thank You

                        Pedro Chairez Y35814

                        [signature]

RECEIVED

JUL 3 1 2024

ADMINISTRATIVE
REVIEW BOARD



To:

Booking Number:

Location:

C, P

Y35814

07, B, N2, MEN, MEN, ILDOC, US

From:

Request Date:

Subject:

Chairez, Rebecca

5/21/2024 9:45:21 AM (CDT)

Response to Howard

Message:

RE: External Rebecca Chairez

Ms. Chairez:

Thank you for reaching out to me concerning Pedro Chairez (Y35814). I have sent your letter to the appropriate office in the Department of Corrections to review this matter. I will follow-up with any further information that I receive.


Howard Moore

Office of Affirmative Action

To:                             C, P
Booking Number:                 Y35814
Location:                       06, B, N2, MEN, MEN, ILDOC, US


From:                           Chairez, Rebecca
Request Date:                   4/28/2024 7:40:49 AM (CDT)
Subject:                        Names and contacts


Message:

I love u Muah sorry for all the emails, I just hope I'm doing this right for u. Please let me know. But u have more reading material lol, sorry not funny. Sweet dreams and I miss I and I am now caught up with all the emails that came today. I got 10 today. lol!!

Questions regarding how to file a complaint can be directed to: Howard Moore, Chief

555 West Monroe - 6th floor

Chicago, IL 60661 (312) 814-6302 Howard.Moore@illinois.gov

Tamara Brown, Affirmative Action Officer

IDOC-Office of Affirmative Action

555 West Monroe, 6* floor Chicago, IL 60661

(312) 814-6304 Tamara.Brown@illinois.gov

Shaina Hanson, Affirmative Action Officer

IDOC-Office of Affirmative Action 135/can Budiang. Lower.Level Springfield, IL 62702

Shaina.K.Hanson@illinois.gov

Martha Fragozo, Affirmative Action Officer

IDOC -Office of Affirmative Action

555 West Monroe, 6th floor

Chicago, IL 60661 (312) 814-0082 Martha.Fragozo@illinois.gov

Shannon Edwards, Affirmative Action Officer

IDOC-Office of Affirmative Action

2309 West Main Street

Marion, IL 62959 (61 944-6507 Shannon.Edwards@illinois.gov

Ashton Williams, Affirmative Action Officer

IDOC-Office of Affirmative Action

1301 Concordia Court Cushman Building, Lower-Level

Springfield, IL 62702 Ashton.Williams@illinois.gov

Jocelyn Delgado, Office Coordinator IDOC-Office of Affirmative Action 555 West Monroe, 6th floor.

Chicago, IL 60661 Jocelyn.Delgado@illinois.gov

Complaints can also be directed to email: DOC.AffirmativeAction@illinois.gov





## Illinois Department of Corrections

| | |
|---|---|
| Facility | Menard Correctional Center |
| Address | 711 Kaskaskia Street |
| City | Menard    State IL    Zip Code 62259 |

Date    May 3, 2024

| | |
|---|---|
| Name | Rebecca Chairez |
| Address | 1108 E Elm Street |
| City | West Frankfort    State IL    Zip Code 62896 |

Dear  Rebecca Chairez ,

This letter shall serve as notice that your visiting privileges have been reviewed as a result of the following violations that occurred during the visit as specified below:

Date of Visit:                    Type of Visit:                    Individual in Custody Visited:  Pedro Chairez, Y35814

Violation(s):

Intel ongoing investigation

Based upon this review:

☐ You are receiving an official warning that any future occurrence of this or other violations will result in a temporary or permanent visiting restriction.

☐ You are temporarily restricted from visiting any individual in custody in the Illinois Department of Corrections. This restriction will be in effect at all facilities within the Department. Any future occurrence of this violation may result in a permanent restriction.

Length of Temporary Restriction:                    to

☑ You are permanently restricted from visiting any individual in custody in the Illinois Department of Corrections. This restriction will be in effect for all in-person and video visits at all facilities within the Department.

**A review of your restriction for possible restoration of visiting privileges shall be conducted upon written request to the facility that imposed the restriction. Such requests may be submitted after six (6) months of restriction, after a year of restriction or on an annual basis thereafter. If the individual in custody who was involved in the original incident has been released or discharged and you request to visit another individual in custody, the facility that initiated the restriction shall conduct the review. If the facility that initiated the restriction is no longer in operation, the request shall be forwarded to the facility currently housing the individual in custody.**

Sincerely,

*Kevin Reichert /lw*
Signature

Kevin Reichert
Print Name

Assistant Warden of Operations
Title

Distribution: Visitor, Gatehouse, Individual in Custody, Individual in Custody Master File, File

*Printed on Recycled Paper*

DOC 0409 (Rev. 10/2022)

Denied    11-19-24    Per  K.R

Y35814 - Chavires, Pedro

NO-8-06



## TERMS AND CONDITIONS

By sending this message you are agreeing to the terms and conditions of this facility, set out below.

Department employees may spot check and read outgoing non-privileged messages. Outgoing non-privileged messages or portions thereof may be reproduced or withheld from delivery if it presents a threat to security or safety, including the following:

1) The message contains threats of physical harm against any person or threats of criminal activity;

2) The message contains threats of blackmail or extortion;

3) The message contains information regarding sending contraband into or out of the facility, plans of escape, or plans to engage in criminal activity;

4) The message is in code and its contents cannot be understood by correctional staff;

5) The message violates any department rules or contains plans to engage in activities in violation of departmental or institutional rules;

6) The message solicits gifts, goods or money from other than family members;

7) The message contains info which, if communicated, might result in physical harm to another;

8) The message contains unauthorized correspondence with another offender; or

9) The message or contents thereof constitute a violation of State or Federal law.



## ADMINISTRATIVE DETENTION REVIEW COMMITTEE

Pedro Chairez Y35814
December 18th, 2023
RE: A.D. Hearing

    The rationale notice is basically based on (3) points of allegations and accusations, with the first two criteria having no relevance at this review and are intentionally meant to be inflammatory and prejudical.
    I will contest and refute these first two points, respectively.

1. The profoundly tragic death of Lt. Floyd, durning a prison riot at Delware D.O.C. I had absolutely nothing to do with that incident. And the security staff blantantly lied by stating I was involved. I have attached two exhibits supporting my statement. The first is an official letterhead from the Attorney General of Delaware, dismissing all related charges to that riot. The second, is a letter from Arizona's security staff, also stating I was cleared of any involvement. See Exh. 1 & 2

    This alone clearly demonstrates Intel's willingness to lie and distort the truth to achieve their agenda.

2. Durning my initial arrival to IDOC, I was placed directly in Pontiac's A.D. Their rationale made zero referrence to the death of Lt. Floyd. Because thats slander. And they strictly built the narrative of the rationale on my disciplinary record and criminal charges from 2009, for Participating in a Criminal Street Gang. I did 3 yrs. in Pontiac for said rationale, without a single ticket. See Exh. 3 (Pontiac Rationale). There is no reason to reinterate an old rationale or charges I received 13-14 yrs. ago. Except to gaslight, mislead this Committee. Its vindictive and double-jeopardy.

    Another curious side note, this rationale wrongly claims Im "allied" with the Latin Kings. However, I just received a ticket from Intel, an ST6-111, for being Latin Folk. Two opposing groups on opposite sides of the spectrum. Again, Intel has displayed a propensity for smudging the truth to paint a certain picture.

pg. 1 of 5

Finally, the 3rd point of this rationale, and the most confusing... is the allegation of drugs. I have ZERO understanding of these drugs in relation to how it applies to me?! This section is convoluted and hard to follow. Alot of unfounded and conjectured assertions, that somehow "tie back to me". A vague statement. I did possess a legal Pharmacy Tech Exam book and pamphelet. It does not tell you how to make, sell or use any drug. It tells you the classification, generic name, side effects, for all legal prescriptions. It says nothing about Meth. I also did have a torn book cover, which I used as a cooking board and spachula for meals! Never had a drug code... I know this, Randolph County is the epi-center for Meth. More specifically, a C.O. from Menard this summer was arrested for a Meth lab, and fired for bringing in Meth to the facility. If this drug is rampant, its the local population probably behind it. Don't try to implicate me with a bookcover and pamphelet. I have never had a ticket for 5yrs. No drugs, not on me, near me or around me.

In summary, the death of an officier and my previous disc. record, have no weight or revelance for this current review. Now, these allegations of Meth, are confusing, and weird. It would be comical, if this wasn't so serious. I know these speculations cannot rise to the level of returning me to A.D. There are appx. 300+ offenders currently in Seg., and over 60% are here for real 203's - Drugs, possession, etc. Menard is the "dumping ground" for said circumstances. But none will be subjected to this kinda persecution and harassment.

A.D. is reserved for the worst of the worst. Not petty speculations of drugs. I have no security problems w/ staff. No weapons. No fights. No violence. No gang authority here. No threats. Im 48yrs old, 7 yrs. to the house. Recently married. I'm classified at Medium Custody. My aggression level is 9 moderate.    All of this is vindictive, and feels retaliatory, because of the misinterpretation of the Delaware incident.

This Committee should deny the placement of A.D. for lack of substantiating evidence. Thank you for your time.

pg. 2 of 5

EXH. 1



**KATHLEEN JENNINGS**
ATTORNEY GENERAL

DEPARTMENT OF JUSTICE
NEW CASTLE COUNTY
820 NORTH FRENCH STREET
WILMINGTON, DELAWARE 19801

CIVIL DIVISION (302) 577-8400
FAX (302) 577-6630
CRIMINAL DIVISION (302) 577-8500
FAX (302) 577-2496
FRAUD DIVISION (302) 577-8600
FAX (302) 577-6499

New Castle County - Criminal Division

March 12, 2019

The Honorable William C. Carpenter, Jr.
Superior Court of the State of Delaware
Leonard L. Williams Justice Center
500 North King Street
Wilmington, Delaware 19801

### STATE OF DELAWARE v.

**PEDRO CHAIREZ,** I.D. #170003424
**ROBERT HERNANDEZ,** I.D. #1710003463;
**JANIIS MATHIS,** I.D. #1710003469;
**LAWRENCE MICHAELS,** I.D. #1710003474;
**JONATAN RODRIGUEZ,** I.D. #1710003488;
**ALEJANDRO RODRIGUEZ-ORTIZ,** I.D. #1710003494;
**ROMAN SHANKARAS,** I.D. #1710003500;
**LOUIS SIERRA, aka ABDULL-HAQQ EL-QADEER,** #11710003430
**COREY SMITH,** I.D. #1710003510

Your Honor:

As the Court is aware there are two dates scheduled for trial on the remaining defendants, one beginning April 29, 2019 and the other beginning October 15, 2019.

The State is intending to proceed to trial on the cases against Roman Shankaras, Lawrence Michaels and Alejandro Rodriguez-Ortiz.

The State will be entering a nolle prosequi on the cases against Pedro Chairez, Robert Hernandez, Janiis Mathis, Jonatan Rodriguez, Luis Sierra and Corey Smith.

In light of Ms. Chavar's March 6, 2019 letter to the court, the State suggests proceeding in April with the trial of Roman Shankaras and in October with the trials of Lawrence Michaels and Alejandro Rodriguez-Ortiz.

1

EXH. 2

# ARIZONA DEPARTMENT OF CORRECTIONS

## Inmate Letter Response

| Inmate Name *(Last, First M.I.)*: Chairez, Pedro | ADC Number: 122999 |
|---|---|

| Institution/Unit:  Interstate | |
|---|---|

| From: Tom Lyerla | Location: Special Services |
|---|---|

Your recent undated letter to the Director regarding out of state placement in accordance with the Interstate Corrections Compact was referred to me so that I may respond on his behalf.

The reason that you were sent out of state was because of you involvement in Security Threat Group (STG) activity.  While in Delaware you were a suspect in the prison riot which resulted in the death of a staff member. Once you were cleared of involvement, Delaware informed Arizona that they no longer wanted to house you and asked us to remove you from their state. At that point it was determined that you would still be a security risk if returned to Arizona, therefore necessitating the need to continue to keep you out of state.

You mentioned in your letter that someone told you that you were not welcome back in Arizona because of the Delaware incident. This had no bearing on the decision not to return you to Arizona.  The reason you were not approved to return to Arizona is the same reason you were sent out of state to begin with – continued involvement in STG affairs.

To be eligible to participate in the Step Down program, an inmate who is in state or out of state will need to refrain from, among other things, "Any participation, through a third party, in STG activity/gang activity, to include facilitating, supporting, encouraging and acknowledging gang activity.  According to STG staff, your letter that was authored on March 31, 2017 was 5 pages long and primarily discussed gang business. The policy states that Arizona interstate inmates must complete a 48 month period without such activity to be eligible for Step-Down.

Since you remain a validated member of a STG, while housed out of state you will need to remain in maximum custody. That is all we can ask of the receiving state. We cannot tell them or recommend to them which facility to place you in. At this time returning you to Arizona is not an option as it is still believed by STG staff that you would be disruptive to the secure and orderly operation of the department.

| Staff Signature: | Date: |
|---|---|
| | 3-18-20 |

pg. 4 of 5

*EXH. 3*

Illinois Department of Corrections

### Notice of Administrative Detention Placement Review

## This document shall serve as notice of your upcoming review for placement in Administrative Detention by the Administrative Detention Review Committee.

CHAIREZ, Pedro

Individual in custody Name

Y35814

ID #

Pontiac CC

Facility

**Review Type:**

☐ Initial Review (Opportunity to be present)

☑ Follow-up Review:    ☐ Opportunity to be present          ☑ File Review

**Review Date:** Your Administrative Detention Placement Review will take place on 12/16/21.

This review will be for: ☐ Initial Placement in Administrative Detention; ☑ Continued Placement; ☐ Transfer from Restrictive Housing.

**Notice of Administration Detention Placement Rationale**: In order to prepare you for your Administrative Detention placement review, you are advised that the Department's rationale for your prospective or continued placement in Administrative Detention is based upon the following reason(s):

CHAIREZ Y35814 has been identified by the Intelligence Unit as being a member of the Mexican Mafia. CHAIREZ was received into IDOC from the Arizona DOC. While in Arizona DOC, CHAIREZ was charged and found guilty of two counts of participation in a Criminal Street Gang and was sentenced to an additional 16 years. A review of CHAIREZ's disciplinary history reflected a disrespect for Law Enforcement and an unwillingness to follow the rules set in place to keep facilities safe. CHAIREZ has continued to be a major security concern at any facility he has been housed at and will be housed at. For the safety and security of this department, CHAIREZ was placed in Administrative Detention.

Copies of the following identified documents relied upon by Department administrators that may subject you to Administrative Detention Placement, or continued placement, are attached to the Notice; however, portions may have been redacted based upon a finding that disclosure would compromise security or safety:

**Description and Purpose of the Review**: Pursuant to Administrative Directive 05.12.101, individuals in custody shall be afforded: initial Administrative Detention placement reviews; 90-day reviews of their on-going Administrative Detention placement; and a placement review if the individual in custody may be subject to Administrative Detention placement prior to the end of his or her restrictive housing status. Once placed in Administrative Detention status, every individual in custody will be subject to a 90-day review by the Administrative Detention Review Committee (Committee). You may appear personally in front of the Committee at their initial Administrative Detention placement review and every 180 days thereafter, if applicable. If your upcoming review affords you the opportunity to personally appear, the type of review will be marked at the top of the form: "Opportunity to be present".

In practice, this means that once an individual in custody is afforded the opportunity to personally appear at the Committee placement review, and if their placement in Administrative Detention is continued, he or

she will receive another file review (not in-person) by the Committee in 90 days. If placement in Administrative Detention is continued at the time of the file review, the individual in custody will be afforded the opportunity to again personally appear at the next 90-day review. This sequence of 90-day reviews will continue as long as the individual in custody is determined to be appropriately placed in Administrative Detention status. Individuals in custody in Administrative detention who have received this notice of Committee placement review may submit written statements and documents two days in advance of the review. If the notice is for the opportunity for an in-person review, the individual in custody may also present written statements and documents to the committee two days in advance of the review, in addition to the opportunity to personally appear to provide oral statements.

At the time of your review, the Committee will examine if your placement in Administrative Detention and your status is appropriate and within the guidelines and considerations in Administrative Directive 05.12.101. Upon conclusion of the review, the Committee will prepare a written report and recommendation concerning the review of your status to the Warden of your facility. The Warden and/or Deputy Director will then approve or disapprove the Committee's recommendations and render a decision on your future placement. You will be informed in writing of the decision within 30 days of the Committee review date. You will be permitted the opportunity to appeal the Committee's decision by checking the box below: "I wish to appeal the Committee's decision on placement into Administrative Detention".

**I certify that I have received the attached Notice of Administrative Detention Placement Review on this date.**

_____          _____
Individual in custody Signature                              Date

This section is only for individuals in custody who are afforded the right to attend the review in-person at the top of this form and wish to waive their right to attend in-person at their review date:

"I hereby acknowledge my right to personally attend the in-person review and knowingly and voluntarily waive my right to appear. I understand that I will be allowed to submit written statements and documents to the Committee for consideration two days prior to the review date but choose not to have the opportunity to personally attend and provide oral statements."

_____          _____
Individual in custody Signature                              Date

☐ Individual in custody refused to sign receipt

_____     _____     _____
Serving Staff Printed Name                   Serving Staff Signature                   Date

Date Delivered: _____          Time Delivered: _____ ☐ AM ☐ PM

I wish to appeal the Committee's decision on placement into Administrative Detention:

☐ Yes (Appeal)          ☐ No (Decline Appeal)

Decision to appeal must be submitted to the Chief of Operations within fourteen (14) calendar days from the date the notice was served to the individual in custody.

_____          _____
Individual in custody Signature                              Date

Distribution:    Individual in Custody, Masterfile,          *Printed on Recycled Paper*          DOC 0432 (Rev.10/2021)
                 Committee Chairperson, File

Side 2



Illinois Department of Corrections
**Notice of Administrative Detention Placement Review**

## This document shall serve as notice of your upcoming review for placement in Administrative Detention by the Administrative Detention Review Committee.

| Pedro CHAIREZ | Y35814 | Menard CC |
|---|---|---|
| Individual in Custody Name | ID # | Facility |

**Review Type:**    ☐ Initial Review (Opportunity to be present)

☒ Follow-up Review:    ☒ Opportunity to be present    ☐ File Review

**Review Date:** Your Administrative Detention Placement Review will take place on Mar 13, 2024 .

This review will be for:    ☐ Initial Placement in Administrative Detention    ☒ Continued Placement

☐ Transfer from Restrictive Housing

**Notice of Administrative Detention Placement Rationale:** In order to prepare you for your Administrative Detention placement review, you are advised that the Department's rationale for your prospective or continued placement in Administrative Detention is based upon the following reason(s):

Pedro "PISTOL PETE" CHAIREZ Y35814 was received into IDOC custody on 4/11/2019 following his involvement in a Delaware Prison riot and hostage situation that resulted in the murder of a correctional lieutenant. While in custody in Delaware DOC, CHAIREZ had a disciplinary history that consisted of Dangerous Contraband, Disobeying Direct Orders, Assault, Falsifying Evidence, Abuse of Privileges, Unauthorized Communication, Threats and Intimidation, and Creating a Health / Safety / Fire Hazard. CHAIREZ has an MSR date of 5/21/2033 and is serving time for the charge of 2nd Degree Murder and his involvement/leadership within the Mexican Mafia while he was housed in the Arizona Department of Corrections resulting in him being charged with two counts of Criminal Street gang activity and Money Laundering. CHAIREZ has been identified as allying with the Latin Kings STG since being housed in IDOC. CHAIREZ was transferred to Menard C.C. on 12/28/2021 following his release from his previous Administrative Detention Placement (Prev. AD Placement 6/4/2019 to 12/28/2021). Since being housed at Menard C.C, CHAIREZ has been identified by multiple confidential sources as introducing Methamphetamine and other narcotics into the Institution. Approximately 44 grams of Methamphetamine recovered by Security Staff in 2023 have tied back to CHAIREZ. On 9/21/2023 during a search of CHAIREZ's assigned cell staff discovered a homemade screwdriver capable of removing the hollowed-out coat rack found in the cell, a laminated pamphlet which determined the chemical breakdown of prescription pills along with a key for coded messages to identify multiple types of drugs, cell phones/chargers, monetary amounts, what type of mail was being sent and different cell phone providers. Staff also discovered in CHAIREZ's property box multiple hard back book covers which had been removed from the books and appeared to have been peeled apart as if to remove something that had been concealed in the book covers. It should noted that all of the 44 grams of Methamphetamine recovered tying back to CHAIREZ were found either concealed inside of an altered box or hard back book binding similarly to the altered books recovered in CHAIREZ assigned cell. CHAIREZ is pending disciplinary for the recovered narcotics. It is the recommendation of Menard C.C. to place Individual in Custody Pedro CHAIREZ Y35814 in Administrative Detention to ensure the Safety and Security of IDOC.

Copies of the following identified documents relied upon by Department administrators that may subject you to Administrative Detention Placement, or continued placement, are attached to the Notice; however, portions may have been redacted based upon a finding that disclosure would compromise security or safety:

| | |
|---|---|
| Distribution: Individual in Custody, Master File, Committee Chairperson, File | *Printed on Recycled Paper* Page 1 of 3 |

DOC 0432 (Rev. 2/2022)

| Pedro CHAIREZ | Y35814 | Menard CC |
|---|---|---|
| Individual in Custody Name | ID # | Facility |

**Description and Purpose of the Review:** Pursuant to Administrative Directive 05.12.101, individuals in custody shall be afforded: initial Administrative Detention placement reviews; 90-day reviews of their on-going Administrative Detention placement; and a placement review if the individual in custody may be subject to Administrative Detention placement prior to the end of his or her restrictive housing status. Once placed in Administrative Detention status, every individual in custody will be subject to a 90-day review by the Administrative Detention Review Committee (Committee). You may appear personally in front of the Committee at their initial Administrative Detention placement review and every 180 days thereafter, if applicable. If your upcoming review affords you the opportunity to personally appear, the type of review will be marked at the top of the form: "Opportunity to be present".

In practice, this means that once an individual in custody is afforded the opportunity to personally appear at the Committee placement review, and if his or her placement in Administrative Detention is continued, he or she will receive another file review (not in-person) by the Committee in 90 days. If placement in Administrative Detention is continued at the time of the file review, the individual in custody will be afforded the opportunity to again personally appear at the next 90-day review. This sequence of 90-day reviews will continue as long as the individual in custody is determined to be appropriately placed in Administrative Detention status. Individuals in custody in Administrative Detention who have received this notice of Committee placement review may submit written statements and documents two days in advance of the review. If the notice is for the opportunity for an in-person review, the individual in custody may also present written statements and documents to the committee two days in advance of the review, in addition to the opportunity to personally appear to provide oral statements.

At the time of your review, the Committee will examine if your placement in Administrative Detention and your status is appropriate and within the guidelines and considerations in Administrative Directive 05.12.101. Upon conclusion of the review, the Committee will prepare a written report and recommendation concerning the review of your status to the Warden of your facility. The Warden and/or Deputy Director will then approve or disapprove the Committee's recommendations and render a decision on your future placement. You will be informed in writing of the decision within 30 days of the Committee review date. You will be permitted the opportunity to appeal the Committee's decision by checking the box below: "I wish to appeal the Committee's decision on placement into Administrative Detention".

**I certify that I have received the attached Notice of Administrative Detention Placement Review on this date.**

_____          _____
Individual in Custody Signature                        Date

This section is only for individuals in custody who are afforded the right to attend the review in-person at the top of this form and wish to waive their right to attend in-person at their review date:

"I hereby acknowledge my right to personally attend the in-person review and knowingly and voluntarily waive my right to appear. I understand that I will be allowed to submit written statements and documents to the Committee for consideration two days prior to the review date but choose not to have the opportunity to personally attend and provide oral statements."

_____          _____
Individual in Custody Signature                        Date

☐ Individual in custody refused to sign receipt.

**Deputy Director Decision:**    ○ I concur with the Committee's recommendation for Administrative Detention placement.

○ I do not concur with the Committee's recommendation for Administrative Detention placement.

I have been provided notice of the Committee's final decision on Administrative Detention placement.

_____          _____
Individual in Custody Signature                        Date

☐ Individual in custody refused to sign.

_____          _____          _____
Print Name of Staff Serving Notification        Signature of Staff Serving Notification        Date

Distribution: Individual in Custody, Master File,                Printed on Recycled Paper                DOC 0432 (Rev. 2/2022)
Committee Chairperson, File                                              Page 2 of 3

Illinois Department of Corrections
**Notice of Administrative Detention Placement Review**

## This document shall serve as notice of your upcoming review for placement in Administrative Detention by the Administrative Detention Review Committee.

| Pedro CHAIREZ | Y35814 | Menard CC |
|---|---|---|
| Individual in Custody Name | ID # | Facility |

**Review Type:**      ☐ Initial Review (Opportunity to be present)

☒ Follow-up Review:      ☒ Opportunity to be present      ☐ File Review

**Review Date:** Your Administrative Detention Placement Review will take place on May 29, 2024          .

This review will be for:      ☐ Initial Placement in Administrative Detention      ☒ Continued Placement

☐ Transfer from Restrictive Housing

**Notice of Administrative Detention Placement Rationale:** In order to prepare you for your Administrative Detention placement review, you are advised that the Department's rationale for your prospective or continued placement in Administrative Detention is based upon the following reason(s):

Pedro "PISTOL PETE" CHAIREZ Y35814 was received into IDOC custody on 4/11/2019 following his involvement in a Delaware Prison riot and hostage situation that resulted in the murder of a correctional lieutenant. While in custody in Delaware DOC, CHAIREZ had a disciplinary history that consisted of Dangerous Contraband, Disobeying Direct Orders, Assault, Falsifying Evidence, Abuse of Privileges, Unauthorized Communication, Threats and Intimidation, and Creating a Health / Safety / Fire Hazard. CHAIREZ has an MSR date of 5/21/2033 and is serving time for the charge of 2nd Degree Murder and his involvement/leadership within the Mexican Mafia while he was housed in the Arizona Department of Corrections resulting in him being charged with two counts of Criminal Street gang activity and Money Laundering. CHAIREZ has been identified as allying with the Latin Kings STG since being housed in IDOC. CHAIREZ was transferred to Menard C.C. on 12/28/2021 following his release from his previous Administrative Detention Placement (Prev. AD Placement 6/4/2019 to 12/28/2021). Since being housed at Menard C.C, CHAIREZ has been identified by multiple confidential sources as introducing Methamphetamine and other narcotics into the Institution. Approximately 44 grams of Methamphetamine recovered by Security Staff in 2023 have tied back to CHAIREZ. On 9/21/2023 during a search of CHAIREZ's assigned cell staff discovered a homemade screwdriver capable of removing the hollowed-out coat rack found in the cell, a laminated pamphlet which determined the chemical breakdown of prescription pills along with a key for coded messages to identify multiple types of drugs, cell phones/chargers, monetary amounts, what type of mail was being sent and different cell phone providers.  Staff also discovered in CHAIREZ's property box multiple hard back book covers which had been removed from the books and appeared to have been peeled apart as if to remove something that had been concealed in the book covers. It should noted that all of the 44 grams of Methamphetamine recovered tying back to CHAIREZ were found either concealed inside of an altered box or hard back book binding similarly to the altered books recovered in CHAIREZ assigned cell. CHAIREZ is pending disciplinary for the recovered narcotics. It is the recommendation of Menard C.C. to place Individual in Custody Pedro CHAIREZ Y35814 in Administrative Detention to ensure the Safety and Security of IDOC.

Copies of the following identified documents relied upon by Department administrators that may subject you to Administrative Detention Placement, or continued placement, are attached to the Notice; however, portions may have been redacted based upon a finding that disclosure would compromise security or safety:

| Pedro CHAIREZ | Y35814 | Menard CC |
|---|---|---|
| Individual in Custody Name | ID # | Facility |

**Description and Purpose of the Review:** Pursuant to Administrative Directive 05.12.101, individuals in custody shall be afforded: initial Administrative Detention placement reviews; 90-day reviews of their on-going Administrative Detention placement; and a placement review if the individual in custody may be subject to Administrative Detention placement prior to the end of his or her restrictive housing status. Once placed in Administrative Detention status, every individual in custody will be subject to a 90-day review by the Administrative Detention Review Committee (Committee). You may appear personally in front of the Committee at their initial Administrative Detention placement review and every 180 days thereafter, if applicable. If your upcoming review affords you the opportunity to personally appear, the type of review will be marked at the top of the form: "Opportunity to be present".

In practice, this means that once an individual in custody is afforded the opportunity to personally appear at the Committee placement review, and if his or her placement in Administrative Detention is continued, he or she will receive another file review (not in-person) by the Committee in 90 days. If placement in Administrative Detention is continued at the time of the file review, the individual in custody will be afforded the opportunity to again personally appear at the next 90-day review. This sequence of 90-day reviews will continue as long as the individual in custody is determined to be appropriately placed in Administrative Detention status. Individuals in custody in Administrative Detention who have received this notice of Committee placement review may submit written statements and documents two days in advance of the review. If the notice is for the opportunity for an in-person review, the individual in custody may also present written statements and documents to the committee two days in advance of the review, in addition to the opportunity to personally appear to provide oral statements.

At the time of your review, the Committee will examine if your placement in Administrative Detention and your status is appropriate and within the guidelines and considerations in Administrative Directive 05.12.101. Upon conclusion of the review, the Committee will prepare a written report and recommendation concerning the review of your status to the Warden of your facility. The Warden and/or Deputy Director will then approve or disapprove the Committee's recommendations and render a decision on your future placement. You will be informed in writing of the decision within 30 days of the Committee review date. You will be permitted the opportunity to appeal the Committee's decision by checking the box below: "I wish to appeal the Committee's decision on placement into Administrative Detention".

**I certify that I have received the attached Notice of Administrative Detention Placement Review on this date.**

_____     _____
Individual in Custody Signature                          Date

This section is only for individuals in custody who are afforded the right to attend the review in-person at the top of this form and wish to waive their right to attend in-person at their review date:

"I hereby acknowledge my right to personally attend the in-person review and knowingly and voluntarily waive my right to appear. I understand that I will be allowed to submit written statements and documents to the Committee for consideration two days prior to the review date but choose not to have the opportunity to personally attend and provide oral statements."

_____     _____
Individual in Custody Signature                          Date

☐ Individual in custody refused to sign receipt.

**Deputy Director Decision:**    ○ I concur with the Committee's recommendation for Administrative Detention placement.

○ I do not concur with the Committee's recommendation for Administrative Detention placement.

I have been provided notice of the Committee's final decision on Administrative Detention placement.

_____     _____
Individual in Custody Signature                          Date

☐ Individual in custody refused to sign.

_____     _____     _____
Print Name of Staff Serving Notification              Signature of Staff Serving Notification              Date

Distribution: Individual in Custody, Master File,
Committee Chairperson, File

*Printed on Recycled Paper*
Page 2 of 3

DOC 0432 (Rev. 2/2022)

Illinois Department of Corrections
**Notice of Administrative Detention Placement Review**

## This document shall serve as notice of your upcoming review for placement in Administrative Detention by the Administrative Detention Review Committee.

| Pedro CHAIREZ | Y35814 | Menard CC |
|---|---|---|
| Individual in Custody Name | ID # | Facility |

**Review Type:**   ☐ Initial Review (Opportunity to be present)

☒ Follow-up Review:     ☒ Opportunity to be present     ☐ File Review

**Review Date:** Your Administrative Detention Placement Review will take place on Jul 17, 2024 .

This review will be for:     ☐ Initial Placement in Administrative Detention     ☒ Continued Placement

☐ Transfer from Restrictive Housing

**Notice of Administrative Detention Placement Rationale:** In order to prepare you for your Administrative Detention placement review, you are advised that the Department's rationale for your prospective or continued placement in Administrative Detention is based upon the following reason(s):

Pedro "PISTOL PETE" CHAIREZ Y35814 was received into IDOC custody on 4/11/2019 following his involvement in a Delaware Prison riot and hostage situation that resulted in the murder of a correctional lieutenant. While in custody in Delaware DOC, CHAIREZ had a disciplinary history that consisted of Dangerous Contraband, Disobeying Direct Orders, Assault, Falsifying Evidence, Abuse of Privileges, Unauthorized Communication, Threats and Intimidation, and Creating a Health / Safety / Fire Hazard. CHAIREZ has an MSR date of 5/21/2033 and is serving time for the charge of 2nd Degree Murder and his involvement/leadership within the Mexican Mafia while he was housed in the Arizona Department of Corrections resulting in him being charged with two counts of Criminal Street gang activity and Money Laundering. CHAIREZ has been identified as allying with the Latin Kings STG since being housed in IDOC. CHAIREZ was transferred to Menard C.C. on 12/28/2021 following his release from his previous Administrative Detention Placement (Prev. AD Placement 6/4/2019 to 12/28/2021). Since being housed at Menard C.C, CHAIREZ has been identified by multiple confidential sources as introducing Methamphetamine and other narcotics into the Institution. Approximately 44 grams of Methamphetamine recovered by Security Staff in 2023 have tied back to CHAIREZ. On 9/21/2023 during a search of CHAIREZ's assigned cell staff discovered a homemade screwdriver capable of removing the hollowed-out coat rack found in the cell, a laminated pamphlet which determined the chemical breakdown of prescription pills along with a key for coded messages to identify multiple types of drugs, cell phones/chargers, monetary amounts, what type of mail was being sent and different cell phone providers. Staff also discovered in CHAIREZ's property box multiple hard back book covers which had been removed from the books and appeared to have been peeled apart as if to remove something that had been concealed in the book covers. It should noted that all of the 44 grams of Methamphetamine recovered tying back to CHAIREZ were found either concealed inside of an altered box or hard back book binding similarly to the altered books recovered in CHAIREZ assigned cell. CHAIREZ is pending disciplinary for the recovered narcotics. It is the recommendation of Menard C.C. to place Individual in Custody Pedro CHAIREZ Y35814 in Administrative Detention to ensure the Safety and Security of IDOC.

Copies of the following identified documents relied upon by Department administrators that may subject you to Administrative Detention Placement, or continued placement, are attached to the Notice; however, portions may have been redacted based upon a finding that disclosure would compromise security or safety:

| Pedro CHAIREZ | Y35814 | Menard CC |
|---|---|---|
| Individual in Custody Name | ID # | Facility |

**Description and Purpose of the Review:** Pursuant to Administrative Directive 05.12.101, individuals in custody shall be afforded: initial Administrative Detention placement reviews; 90-day reviews of their on-going Administrative Detention placement; and a placement review if the individual in custody may be subject to Administrative Detention placement prior to the end of his or her restrictive housing status. Once placed in Administrative Detention status, every individual in custody will be subject to a 90-day review by the Administrative Detention Review Committee (Committee). You may appear personally in front of the Committee at their initial Administrative Detention placement review and every 180 days thereafter, if applicable. If your upcoming review affords you the opportunity to personally appear, the type of review will be marked at the top of the form: "Opportunity to be present".

In practice, this means that once an individual in custody is afforded the opportunity to personally appear at the Committee placement review, and if his or her placement in Administrative Detention is continued, he or she will receive another file review (not in-person) by the Committee in 90 days. If placement in Administrative Detention is continued at the time of the file review, the individual in custody will be afforded the opportunity to again personally appear at the next 90-day review. This sequence of 90-day reviews will continue as long as the individual in custody is determined to be appropriately placed in Administrative Detention status. Individuals in custody in Administrative Detention who have received this notice of Committee placement review may submit written statements and documents two days in advance of the review. If the notice is for the opportunity for an in-person review, the individual in custody may also present written statements and documents to the committee two days in advance of the review, in addition to the opportunity to personally appear to provide oral statements.

At the time of your review, the Committee will examine if your placement in Administrative Detention and your status is appropriate and within the guidelines and considerations in Administrative Directive 05.12.101. Upon conclusion of the review, the Committee will prepare a written report and recommendation concerning the review of your status to the Warden of your facility. The Warden and/or Deputy Director will then approve or disapprove the Committee's recommendations and render a decision on your future placement. You will be informed in writing of the decision within 30 days of the Committee review date. You will be permitted the opportunity to appeal the Committee's decision by checking the box below: "I wish to appeal the Committee's decision on placement into Administrative Detention".

**I certify that I have received the attached Notice of Administrative Detention Placement Review on this date.**

| | |
|---|---|
| Individual in Custody Signature | Date |

This section is only for individuals in custody who are afforded the right to attend the review in-person at the top of this form and wish to waive their right to attend in-person at their review date:

"I hereby acknowledge my right to personally attend the in-person review and knowingly and voluntarily waive my right to appear. I understand that I will be allowed to submit written statements and documents to the Committee for consideration two days prior to the review date but choose not to have the opportunity to personally attend and provide oral statements."

| | |
|---|---|
| Individual in Custody Signature | Date |

☐ Individual in custody refused to sign receipt.

**Deputy Director Decision:**   ◯ I concur with the Committee's recommendation for Administrative Detention placement.

◯ I do not concur with the Committee's recommendation for Administrative Detention placement.

I have been provided notice of the Committee's final decision on Administrative Detention placement.

| | |
|---|---|
| Individual in Custody Signature | Date |

☐ Individual in custody refused to sign.

| | | |
|---|---|---|
| Print Name of Staff Serving Notification | Signature of Staff Serving Notification | Date |

Distribution: Individual in Custody, Master File, Committee Chairperson, File

*Printed on Recycled Paper*
Page 2 of 3

DOC 0432 (Rev. 2/2022)

Illinois Department of Corrections
**Notice of Administrative Detention Placement Review**

# This document shall serve as notice of your upcoming review for placement in Administrative Detention by the Administrative Detention Review Committee.

| Pedro CHAIREZ | Y35814 | Menard CC |
|---|---|---|
| Individual in Custody Name | ID # | Facility |

**Review Type:**   ☐ Initial Review (Opportunity to be present)

☒ Follow-up Review:   ☒ Opportunity to be present   ☐ File Review

**Review Date:** Your Administrative Detention Placement Review will take place on Oct 2, 2024.

This review will be for:   ☐ Initial Placement in Administrative Detention   ☒ Continued Placement

☐ Transfer from Restrictive Housing

**Notice of Administrative Detention Placement Rationale:** In order to prepare you for your Administrative Detention placement review, you are advised that the Department's rationale for your prospective or continued placement in Administrative Detention is based upon the following reason(s):

Pedro "PISTOL PETE" CHAIREZ Y35814 was received into IDOC custody on 4/11/2019 following his involvement in a Delaware Prison riot and hostage situation that resulted in the murder of a correctional lieutenant. While in custody in Delaware DOC, CHAIREZ had a disciplinary history that consisted of Dangerous Contraband, Disobeying Direct Orders, Assault, Falsifying Evidence, Abuse of Privileges, Unauthorized Communication, Threats and Intimidation, and Creating a Health / Safety / Fire Hazard. CHAIREZ has an MSR date of 5/21/2033 and is serving time for the charge of 2nd Degree Murder and his involvement/leadership within the Mexican Mafia while he was housed in the Arizona Department of Corrections resulting in him being charged with two counts of Criminal Street gang activity and Money Laundering. CHAIREZ has been identified as allying with the Latin Kings STG since being housed in IDOC. CHAIREZ was transferred to Menard C.C. on 12/28/2021 following his release from his previous Administrative Detention Placement (Prev. AD Placement 6/4/2019 to 12/28/2021). Since being housed at Menard C.C, CHAIREZ has been identified by multiple confidential sources as introducing Methamphetamine and other narcotics into the Institution. Approximately 44 grams of Methamphetamine recovered by Security Staff in 2023 have tied back to CHAIREZ. On 9/21/2023 during a search of CHAIREZ's assigned cell staff discovered a homemade screwdriver capable of removing the hollowed-out coat rack found in the cell, a laminated pamphlet which determined the chemical breakdown of prescription pills along with a key for coded messages to identify multiple types of drugs, cell phones/chargers, monetary amounts, what type of mail was being sent and different cell phone providers. Staff also discovered in CHAIREZ's property box multiple hard back book covers which had been removed from the books and appeared to have been peeled apart as if to remove something that had been concealed in the book covers. It should noted that all of the 44 grams of Methamphetamine recovered tying back to CHAIREZ were found either concealed inside of an altered box or hard back book binding similarly to the altered books recovered in CHAIREZ assigned cell. CHAIREZ is pending disciplinary for the recovered narcotics. It is the recommendation of Menard C.C. to place Individual in Custody Pedro CHAIREZ Y35814 in Administrative Detention to ensure the Safety and Security of IDOC.

Copies of the following identified documents relied upon by Department administrators that may subject you to Administrative Detention Placement, or continued placement, are attached to the Notice; however, portions may have been redacted based upon a finding that disclosure would compromise security or safety:

| | |
|---|---|
| Distribution: Individual in Custody, Master File, Committee Chairperson, File | *Printed on Recycled Paper* Page 1 of 3   DOC 0432 (Rev. 2/2022) |

| Pedro CHAIREZ | Y35814 | Menard CC |
|---|---|---|
| Individual in Custody Name | ID # | Facility |

**Description and Purpose of the Review:** Pursuant to Administrative Directive 05.12.101, individuals in custody shall be afforded: initial Administrative Detention placement reviews; 90-day reviews of their on-going Administrative Detention placement; and a placement review if the individual in custody may be subject to Administrative Detention placement prior to the end of his or her restrictive housing status. Once placed in Administrative Detention status, every individual in custody will be subject to a 90-day review by the Administrative Detention Review Committee (Committee). You may appear personally in front of the Committee at their initial Administrative Detention placement review and every 180 days thereafter, if applicable. If your upcoming review affords you the opportunity to personally appear, the type of review will be marked at the top of the form: "Opportunity to be present".

In practice, this means that once an individual in custody is afforded the opportunity to personally appear at the Committee placement review, and if his or her placement in Administrative Detention is continued, he or she will receive another file review (not in-person) by the Committee in 90 days. If placement in Administrative Detention is continued at the time of the file review, the individual in custody will be afforded the opportunity to again personally appear at the next 90-day review. This sequence of 90-day reviews will continue as long as the individual in custody is determined to be appropriately placed in Administrative Detention status. Individuals in custody in Administrative Detention who have received this notice of Committee placement review may submit written statements and documents two days in advance of the review. If the notice is for the opportunity for an in-person review, the individual in custody may also present written statements and documents to the committee two days in advance of the review, in addition to the opportunity to personally appear to provide oral statements.

At the time of your review, the Committee will examine if your placement in Administrative Detention and your status is appropriate and within the guidelines and considerations in Administrative Directive 05.12.101. Upon conclusion of the review, the Committee will prepare a written report and recommendation concerning the review of your status to the Warden of your facility. The Warden and/or Deputy Director will then approve or disapprove the Committee's recommendations and render a decision on your future placement. You will be informed in writing of the decision within 30 days of the Committee review date. You will be permitted the opportunity to appeal the Committee's decision by checking the box below: "I wish to appeal the Committee's decision on placement into Administrative Detention".

**I certify that I have received the attached Notice of Administrative Detention Placement Review on this date.**

_____          _____
Individual in Custody Signature                                    Date

This section is only for individuals in custody who are afforded the right to attend the review in-person at the top of this form and wish to waive their right to attend in-person at their review date:

"I hereby acknowledge my right to personally attend the in-person review and knowingly and voluntarily waive my right to appear. I understand that I will be allowed to submit written statements and documents to the Committee for consideration two days prior to the review date but choose not to have the opportunity to personally attend and provide oral statements."

_____          _____
Individual in Custody Signature                                    Date

☐ Individual in custody refused to sign receipt.

**Deputy Director Decision:**    ○ I concur with the Committee's recommendation for Administrative Detention placement.

○ I do not concur with the Committee's recommendation for Administrative Detention placement.

I have been provided notice of the Committee's final decision on Administrative Detention placement.

_____          _____
Individual in Custody Signature                                    Date

☐ Individual in custody refused to sign.

_____     _____     _____
Print Name of Staff Serving Notification     Signature of Staff Serving Notification     Date

Distribution: Individual in Custody, Master File,                Printed on Recycled Paper                DOC 0432 (Rev. 2/2022)
Committee Chairperson, File                                           Page 2 of 3

Illinois Department of Corrections
**Notice of Administrative Detention Placement Review**

## This document shall serve as notice of your upcoming review for placement in Administrative Detention by the Administrative Detention Review Committee.

| | | |
|---|---|---|
| Pedro CHAIREZ | Y35814 | Menard CC |
| Individual in Custody Name | ID # | Facility |

**Review Type:**      ☐ Initial Review (Opportunity to be present)

☒ Follow-up Review:      ☒ Opportunity to be present      ☐ File Review

**Review Date:** Your Administrative Detention Placement Review will take place on Dec 12, 2024 .

This review will be for:      ☐ Initial Placement in Administrative Detention      ☒ Continued Placement

☐ Transfer from Restrictive Housing

**Notice of Administrative Detention Placement Rationale:** In order to prepare you for your Administrative Detention placement review, you are advised that the Department's rationale for your prospective or continued placement in Administrative Detention is based upon the following reason(s):

Pedro "PISTOL PETE" CHAIREZ Y35814 was received into IDOC custody on 4/11/2019 following his involvement in a Delaware Prison riot and hostage situation that resulted in the murder of a correctional lieutenant. While in custody in Delaware DOC, CHAIREZ had a disciplinary history that consisted of Dangerous Contraband, Disobeying Direct Orders, Assault, Falsifying Evidence, Abuse of Privileges, Unauthorized Communication, Threats and Intimidation, and Creating a Health / Safety / Fire Hazard. CHAIREZ has an MSR date of 5/21/2033 and is serving time for the charge of 2nd Degree Murder and his involvement/leadership within the Mexican Mafia while he was housed in the Arizona Department of Corrections resulting in him being charged with two counts of Criminal Street gang activity and Money Laundering. CHAIREZ has been identified as allying with the Latin Kings STG since being housed in IDOC. CHAIREZ was transferred to Menard C.C. on 12/28/2021 following his release from his previous Administrative Detention Placement (Prev. AD Placement 6/4/2019 to 12/28/2021). Since being housed at Menard C.C, CHAIREZ has been identified by multiple confidential sources as introducing Methamphetamine and other narcotics into the Institution. Approximately 44 grams of Methamphetamine recovered by Security Staff in 2023 have tied back to CHAIREZ. On 9/21/2023 during a search of CHAIREZ's assigned cell staff discovered a homemade screwdriver capable of removing the hollowed-out coat rack found in the cell, a laminated pamphlet which determined the chemical breakdown of prescription pills along with a key for coded messages to identify multiple types of drugs, cell phones/chargers, monetary amounts, what type of mail was being sent and different cell phone providers. Staff also discovered in CHAIREZ's property box multiple hard back book covers which had been removed from the books and appeared to have been peeled apart as if to remove something that had been concealed in the book covers. It should noted that all of the 44 grams of Methamphetamine recovered tying back to CHAIREZ were found either concealed inside of an altered box or hard back book binding similarly to the altered books recovered in CHAIREZ assigned cell. CHAIREZ is pending disciplinary for the recovered narcotics. It is the recommendation of Menard C.C. to place Individual in Custody Pedro CHAIREZ Y35814 in Administrative Detention to ensure the Safety and Security of IDOC.

Copies of the following identified documents relied upon by Department administrators that may subject you to Administrative Detention Placement, or continued placement, are attached to the Notice; however, portions may have been redacted based upon a finding that disclosure would compromise security or safety:

Distribution: Individual in Custody, Master File,
Committee Chairperson, File

Printed on Recycled Paper
Page 1 of 3

DOC 0432 (Rev. 2/2022)

| Pedro CHAIREZ | Y35814 | Menard CC |
|---|---|---|
| Individual in Custody Name | ID # | Facility |

**Description and Purpose of the Review:** Pursuant to Administrative Directive 05.12.101, individuals in custody shall be afforded: initial Administrative Detention placement reviews; 90-day reviews of their on-going Administrative Detention placement; and a placement review if the individual in custody may be subject to Administrative Detention placement prior to the end of his or her restrictive housing status. Once placed in Administrative Detention status, every individual in custody will be subject to a 90-day review by the Administrative Detention Review Committee (Committee). You may appear personally in front of the Committee at their initial Administrative Detention placement review and every 180 days thereafter, if applicable. If your upcoming review affords you the opportunity to personally appear, the type of review will be marked at the top of the form: "Opportunity to be present".

In practice, this means that once an individual in custody is afforded the opportunity to personally appear at the Committee placement review, and if his or her placement in Administrative Detention is continued, he or she will receive another file review (not in-person) by the Committee in 90 days. If placement in Administrative Detention is continued at the time of the file review, the individual in custody will be afforded the opportunity to again personally appear at the next 90-day review. This sequence of 90-day reviews will continue as long as the individual in custody is determined to be appropriately placed in Administrative Detention status. Individuals in custody in Administrative Detention who have received this notice of Committee placement review may submit written statements and documents two days in advance of the review. If the notice is for the opportunity for an in-person review, the individual in custody may also present written statements and documents to the committee two days in advance of the review, in addition to the opportunity to personally appear to provide oral statements.

At the time of your review, the Committee will examine if your placement in Administrative Detention and your status is appropriate and within the guidelines and considerations in Administrative Directive 05.12.101. Upon conclusion of the review, the Committee will prepare a written report and recommendation concerning the review of your status to the Warden of your facility. The Warden and/or Deputy Director will then approve or disapprove the Committee's recommendations and render a decision on your future placement. You will be informed in writing of the decision within 30 days of the Committee review date. You will be permitted the opportunity to appeal the Committee's decision by checking the box below: "I wish to appeal the Committee's decision on placement into Administrative Detention".

**I certify that I have received the attached Notice of Administrative Detention Placement Review on this date.**

| | |
|---|---|
| Individual in Custody Signature | Date |

This section is only for individuals in custody who are afforded the right to attend the review in-person at the top of this form and wish to waive their right to attend in-person at their review date:

"I hereby acknowledge my right to personally attend the in-person review and knowingly and voluntarily waive my right to appear. I understand that I will be allowed to submit written statements and documents to the Committee for consideration two days prior to the review date but choose not to have the opportunity to personally attend and provide oral statements."

| | |
|---|---|
| Individual in Custody Signature | Date |

☐ Individual in custody refused to sign receipt.

**Deputy Director Decision:**   ○ I concur with the Committee's recommendation for Administrative Detention placement.

○ I do not concur with the Committee's recommendation for Administrative Detention placement.

I have been provided notice of the Committee's final decision on Administrative Detention placement.

| | |
|---|---|
| Individual in Custody Signature | Date |

☐ Individual in custody refused to sign.

| | | |
|---|---|---|
| Print Name of Staff Serving Notification | Signature of Staff Serving Notification | Date |

EXHIBIT

K



JB Pritzker
Governor

Latoya Hughes
Acting Director

## The Illinois Department of Corrections

1301 Concordia Court • P.O. Box 19277 • Springfield, IL 62794-9277 • (217) 558-2200 TDD: (800) 526-0844

# M E M O R A N D U M

DATE:    June 28, 2024

TO:      Chairez, Pedro Y35814
         Menard Correctional Center

FROM:    Justin Hammers
         Chief of Operations

SUBJECT: Administrative Dettention Placement Appeal

This memo shall serve as notification that the appeal of your Administrative Detention Placement has been reviewed. Your appeal has been denied; however, you shall be permitted to grieve your placement in Administrative Detention.

*Mission: To serve justice in Illinois and increase public safety by promoting positive change for those in custody, operating successful reentry programs, and reducing victimization.*

**www.illinois.gov/idoc**



JB Pritzker
Governor

Latoya Hughes
Acting Director

## The Illinois Department of Corrections

1301 Concordia Court • P.O. Box 19277 • Springfield, IL 62794-9277 • (217) 558-2200 TDD: (800) 526-0844

# MEMORANDUM

DATE:    October 7, 2024

TO:    Chaireaz,PedroY35814 Menard Correctional Center

FROM:    Justin Hammers
Chief of Operations

SUBJECT: Administrative Dettention Placement Appeal

This memo shall serve as notification that the appeal of your Administrative Detention Placement has been reviewed. Your appeal has been denied; however, you shall be permitted to grieve your placement in Administrative Detention.

*Mission: To serve justice in Illinois and increase public safety by promoting positive change for those in custody, operating successful reentry programs, and reducing victimization.*

**www.illinois.gov/idoc**



ILLINOIS DEPARTMENT OF CORRECTIONS
**RESPONSE TO INDIVIDUAL IN CUSTODY'S GRIEVANCE**

| Grievance Officer's Report | |
|---|---|

Date Received: 07/22/2024       Date of Review: 08/09/2024       Grievance #: K4-0724-3032

Individual in Custody Name: Chairez, Pedro       ID#: Y35814

**Nature of Grievance:**

Administrative Detention Placement

**Facts Reviewed:**

Individual in Custody submitted a grievance dated 07/08/2024 and grieves he received a memorandum from Justin Hammers, Chief of Operations, denying his appeal for continued administrative detention placement. He claims placement goes against IDOC policy since he feels he is not the most dangerous, violent, or unmanageable within the facility and does not qualify. He also states there was no reason given at the hearing or from the appeal why he was denied.

Relief Requested - "Immediate release from AD"

Counselor reviewed on 07/17/2024 - See attached DOC 0743 for response.

Grievance Office reviewed on 08/09/2024 - This grievance officer notes that Administrative Detention is a grievable issue in accordance with AD 05.12.101.  Your continued Administrative Detention placement was reviewed and recommended by the RMC, approved by the CAO, and in accordance with AD 05.12.101 you requested an appeal to the Chief of Operations. The Chief of Operations denied your appeal. During the review of your Administrative Detention placement, it is noted that process and policy were followed to make the determination for continued placement. Also, during the placement review it is documented that Individual Chairez continued to violate DR504F sanctions, including violations of 104, 111, and 601/203. These violations foster an unsafe environment at Menard Correctional Center. This grievance officer notes that Individual Chairez has made documented decisions that present safety and security issues at the facility. -----CONTINUED------>>>

**Recommendation:**

Based upon a total review of all available information, it is the recommendation of this Grievance Officer that the Individual in Custody's grievance be DENIED. The Individual is appropriately placed.

J. Guetersloh - Correctional Counselor 1       Jacob Guetersloh  Digitally signed by Jacob Guetersloh Date: 2024.08.09 10:25:23 -05'00'

Print Grievance Officer's Name       Grievance Officer's Signature

(Attach a copy of Individual in Custody's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response | |
|---|---|

Date Received: 08/09/2024       ■ I concur       ☐ I do not concur       ☐ Remand

**Action Taken:**

Kevin Reichert       Digitally signed by Kevin Reichert Date: 2024.08.16 14:34:40 -05'00'

Chief Administrative Officer's Signature       Date

| Individual in Custody's Appeal To The Director | |
|---|---|

I am appealing the Chief Administrative Officer's decision to the Director.  I understand this appeal must, within 30 days after the date of the Chief Administrative Officer's decision, be received by the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response if applicable, and any pertinent documents.)

filed ~ 8·23·24

Individual in Custody's Signature       ID#       Date

ILLINOIS DEPARTMENT OF CORRECTIONS
### RESPONSE TO INDIVIDUAL IN CUSTODY'S GRIEVANCE (Continued)

----CONTINUED----->>> This grievance officer concurs that Administrative Detention placement is appropriate at this time. The individual will be allowed another Administrative Detention Review 90 days from the last review.

DR 504.810 which states The grievance procedure shall not be utilized for complaints regarding decisions that have been rendered by the Director, such as, but not limited to, facility placement, awards of supplemental sentence credit or transfer denials, or decisions that are outside the authority of the Department, such as parole decisions, clemency or orders regarding length of sentence.



# STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS
## ADJUSTMENT COMMITTEE
## FINAL SUMMARY REPORT

| | | |
|---|---|---|
| **Name:** CHAIREZ, PEDRO | **IDOC Number:** Y35814 | **Race:** HSP |
| **Hearing Date/Time:** 12/22/2023  08:12 AM | **Living Unit:** MEN-N2-B-07 | **Orientation Status:** N/A |
| **Incident Number:** 202302594/1 - MEN | **Status:** Final | |

| Date | Ticket # | Incident Officer | Location | Time |
|---|---|---|---|---|
| 12/19/2023 | 202302594/1-MEN | SCHANZ, JEROD R | INTERNAL AFFAIRS | 08:00 AM |

| Offense | Violation | Final Result |
|---|---|---|
| 601.Conspiracy/203 | Drugs & Drug Paraphernalia<br>*Comments:distributing methamphetamine* | Guilty |
| 601.Conspiracy/308 | Contraband/Unauthorized Property | Guilty |

| Witness Type | Witness ID | Witness Name | Witness Status |
|---|---|---|---|

**No Witness Requested**

## RECORD OF PROCEEDINGS

Individual in Custody Chairez-Y35814 appeared before the committee for charges and plead not guilty stating been in RH for 90 days, this is ridiculous.

## BASIS FOR DECISION

Based on the observation of the reporting employee, upon the conclusion of an internal investigation that was concluded on today's date, the investigation was being conducted in an attempt to identify individual is custody who may be attempting to or receiving drugs and drug paraphernalia trough the institutional mail and distributing them to other individual custody. During the course of the investigation interviews were conducted at which time three confidential sources (name and numbers being withheld for the safety and security of the institution but deemed reliable due to the consistency of their statements) identified Chairez-Y35814 as being a source of distributing drugs, specifically methamphetamine throughout Menard Correctional Center. Due to the serious negative side effects and life-threatening complications that methamphetamine brings and the willingness to introduce methamphetamine.
Chain of command was notified.
-Individuals in Custody Chairez-Y35814 was identified by ID card and offender O360.
-Committee finds Individual in Custody guilty based on information provided and accepts the written report to be a factual account of the incident and is satisfied the violations occurred as reported.
Based on the verification from the Menard Internal Affairs Unit.
The adjustment committee finds the information provided by the confidential source to be reliable based upon verification from Internal Affairs.  The names and numbers of the Confidential Sources is being withheld for the safety and security of the institution but deemed reliable due to the consistency of their statement.

## DISCIPLINARY ACTION  *(Consecutive to any priors)*

| RECOMMENDED | FINAL |
|---|---|
| 3 Months C Grade | 3 Months C Grade |
| 3 Months Segregation | 3 Months Segregation |
| **Basis for Discipline:Nature of offense** | |

## Signatures
### Hearing Committee

| | Signature | Date | Race |
|---|---|---|---|
| SCHOENBECK, JOSHUA A  - Chair Person | | 12/22/23 | WHI |
| RAYFORD, CHARLES J | | 12/22/23 | BLK |
| Recommended Action Approved | | | |

**Final Comments:** N/A

# STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS
## ADJUSTMENT COMMITTEE
## FINAL SUMMARY REPORT

**Name:** CHAIREZ, PEDRO          **IDOC Number:** Y35814          **Race:** HSP

**Hearing Date/Time:** 12/22/2023  08:12 AM          **Living Unit:** MEN-N2-B-07          **Orientation Status:** N/A

**Incident Number:** 202302594/1 - MEN          **Status:** Final

ANTHONY D WILLS / ADW  2/26/2024                                          02/26/24

**Chief Administrative Officer**          **Signature**          **Date**

The committed person has the right to appeal an adverse decision through the grievance procedure established by Department Rule 504: Subpart F.

                                                      3-14-24    1500

**Employee Serving Copy to Committed Person**          **When Served  -- Date and Time**



EXHIBIT N

NII
B-7

Illinois Department of Corrections
**Notification of Mail Scan Status**

Menard Correctional Center
Facility

**Individual in Custody Name:** PEDRO CHAIREZ                          **ID #:** Y35814

**CAO Rationale for Placement of Above Listed Individual in Custody on Mail Scan Status:**

PEDRO CHAIREZ Y35814 was issued a Disciplinary Report on 10/19/23 for 601/203; Conspiracy to Drugs and Drug Paraphernalia, and 601/308; Conspiracy to Contraband based upon the conclusion of an investigation. The investigation was being conducted in an attempt to identify individuals in custody who may have been attempting to, or receiving drugs and drug paraphernalia through institutional mail and distributing them to other individuals in custody. During the course of the investigation interviews were conducted at which time three confidential sources (names and numbers being withheld for the safety and security of the institution but deemed reliable due to the consistency of their statements) identified PEDRO CHAIREZ Y35814 as being a source of distributing drugs, specifically methamphetamine throughout Menard Correctional Center.

_____                          1/19/24
**CAO Signature**                                        **Date**

**Individual in Custody's Rebuttal to Recommendation for Placement on Mail Scan Status:**

_____                          _____
**Individual in Custody Name and ID Number**              **Date**

**Deputy Director's Decision for Placement on Mail Scan Status (for initial placement and extensions):**

☒ Approve          ☐ Deny

_Angela Locke_                                           1/19/24
**Deputy Director Signature**                            **Date**

Page 1

Distribution: Internal Affairs; Mailroom;          Printed on Recycled Paper          OOC 0729 (Eff. 6/2023)
Master File

Illinois Department of Corrections
**Notification of Mail Scan Status**

**To the Individual in Custody:**

This notice is to inform you of your placement into mail scan status. As per DR 525.140, your incoming non-privileged mail will be reproduced and delivered to you in a timely manner. Your mail scan status is for the safety and security of you and the facility. It is your choice to have your incoming mail originals be returned to sender, sent out on a visit, or destroyed by the facility. Your status will be reviewed by the CAO in 90 days.

**Please select one of the following options (refusal to select an option will result in your incoming mail being destroyed after the originals have been scanned):**

☐ Return my incoming mail to Sender after originals have been scanned.

☐ Send my incoming mail out of the facility on a visit after originals have been scanned.

☐ Destroy my incoming mail after originals have been scanned.

**If you wish to appeal the decision of your placement into mail scan status to the Chief of Operations, please mark the box below:**

☐ I wish to appeal my placement into mail scan status. Mail items will be held until a final review is conducted (within 7 calendar days upon receipt by the Chief of Operations) and a decision is made by the Chief of Operations. Once a decision has been made and if the mail scan status is upheld, your incoming mail items will be handled in accordance with the selection made in the prior section of this form.

_____    _____
Individual in Custody Signature              Date

**\*\*\* DO NOT WRITE BELOW THIS LINE – ADMINISTRATIVE PROCESSING ONLY \*\*\***

_____

**Chief of Operations' Review of Appeal:**
(Approval indicates Mail Scan Status shall be imposed; Denial indicates Mail Scan Status is Denied)

☐ Approve          ☐ Deny

_____    _____
Chief of Operations Signature                Date

Page 2



EXHIBIT

O

THIS SIDE ONLY

## 730 ILCS 5/3-7-2

Statutes current with legislation through P.A. 103-583 of the 2023 Regular Session of the 103rd General Assembly.

*Illinois Compiled Statutes Annotated > Chapter 730 CORRECTIONS (§§ 5/1-1-1 — 5) > Unified Code of Corrections (Chs. I — VIII) > Chapter III. Department of Corrections (Arts. 1 — 19) > Article 7. Facilities (§§ 5/3-7-1 — 5/3-7-8)*

## 730 ILCS 5/3-7-2 Facilities.

(a) All institutions and facilities of the Department shall provide every committed person with access to toilet facilities, barber facilities, bathing facilities at least once each week, a library of legal materials and published materials including newspapers and magazines approved by the Director. A committed person may not receive any materials that the Director deems pornographic.

(b) (Blank).

(c) All institutions and facilities of the Department shall provide facilities for every committed person to leave his cell for at least one hour each day unless the chief administrative officer determines that it would be harmful or dangerous to the security or safety of the institution or facility.

(d) All institutions and facilities of the Department shall provide every committed person with a wholesome and nutritional diet at regularly scheduled hours, drinking water, clothing adequate for the season, including underwear, bedding, soap and towels and medical and dental care. Underwear provided to each committed person in all institutions and facilities of the Department shall be free of charge and shall be provided at any time upon request, including multiple requests, of the committed person or as needed by the committed person.

(e) All institutions and facilities of the Department shall permit every committed person to send and receive an unlimited number of uncensored letters, provided, however, that the Director may order that mail be inspected and read for reasons of the security, safety or morale of the institution or facility.

(f) All of the institutions and facilities of the Department shall permit every committed person to receive in-person visitors and video contact, if available, except in case of abuse of the visiting privilege or when the chief administrative officer determines that such visiting would be harmful or dangerous to the security, safety or morale of the institution or facility. Each committed person is entitled to 7 visits per month. Every committed person may submit a list of at least 30 persons to the Department that are authorized to visit the committed person. The list shall be kept in an electronic format by the Department beginning on August 1, 2019, as well as available in paper form for Department employees. The chief administrative officer shall have the right to restrict visitation to non-contact visits, video, or other forms of non-contact visits for reasons of safety, security, and order, including, but not limited to, restricting contact visits for committed persons engaged in gang activity. No committed person in a super maximum security facility or on disciplinary segregation is allowed contact visits. Any committed person found in possession of illegal drugs or who fails a drug test shall not be permitted contact visits for a period of at least 6 months. Any committed person involved in gang activities or found guilty of assault committed against a Department employee shall not be permitted contact visits for a period of at least 6 months. The Department shall offer every visitor appropriate written information concerning HIV and AIDS, including information concerning how to contact the Illinois Department of Public Health for counseling information. The Department shall develop the written materials in consultation with the Department of Public Health. The Department shall ensure that all such information and materials are culturally sensitive and reflect cultural diversity as appropriate. Implementation of the changes made to this Section by Public Act 94-629 is subject to appropriation. The Department shall seek the lowest possible cost to provide video calling and shall charge to the extent of



THIS SIDE ONLY

| | Illinois Department of Corrections<br>Administrative Directive | Page **7** of **11** |
|---|---|---|
| Number:<br>   05.01.106 | Title:<br>Individual in Custody Visits | Effective:<br>   10/1/2022 |

      d.     Security staff shall search and secure the designated area prior to the individual in custody breastfeeding and again once the individual in custody has finished breastfeeding.

      e.     The individual in custody shall be allowed reasonable privacy while breastfeeding their child.

11.    The following procedures shall apply regarding inappropriate behavior:

      a.     If any inappropriate behavior of a visitor is observed by an employee or if contraband is detected, the employee shall immediately notify the Shift Supervisor who shall determine whether to terminate the visit.

           (1)    The reporting employee and any other employee who witnessed the incident shall immediately prepare an Incident Report, DOC 0434, fully outlining the exact details; and

           (2)    The Shift Supervisor shall contact the Back-up Duty Administrative Officer who may issue a temporary restriction on the visitor.

      b.     After a review of all written reports, the CAO shall determine whether a written warning or a temporary or a permanent restriction shall be issued in accordance with Department Rule 525: Subpart A.

           (1)    If it is determined that a written warning will suffice, the CAO shall prepare a Visitor Restriction Notification, DOC 0409, to the visitor, with a copy to the individual in custody, outlining the incident and indicating that any future occurrences may result in either a temporary or a permanent visiting restriction. A copy of the letter shall be retained in the individual in custody's master file.

           (2)    If it is determined that a temporary or a permanent restriction is warranted, the CAO shall prepare a DOC 0409 to the visitor, with a copy to the individual in custody, outlining the incident and indicating the type of restriction. If a temporary restriction is issued, the exact timeframe for the restriction shall be identified. A copy of the letter shall be retained in the individual in custody's master file. The restriction, whether temporary or permanent, shall be input into the Visitor Tracking System in O360.

      c.     A review of restrictions for possible restoration of visiting privileges shall be conducted upon written request of the restricted visitor or individual in custody, provided requests are submitted after six months of restriction, after a year of restriction or on an annual basis thereafter. However, the CAO may review and restore visiting privileges at any time.

          **NOTE:** The review shall be conducted by the facility that placed the visitor on restriction. If the individual in custody who was involved in the original incident that resulted in a visitor restriction has been released or discharged, and the restricted visitor requests to visit another individual in custody, the facility that initiated the restriction shall conduct the review.

           (1)    If visitor privileges are reinstated, the notice of reinstatement shall be sent to the visitor, a copy shall be retained in the master file of the individual in custody who was involved in the original incident and a copy shall be provided to or be retained by the facility that originally issued the restriction. The visitor restriction shall be inactivated in the Visitor Tracking System in O360.

EXHIBIT

Q

# Declaration under penalty of Perjury

Pursuant To 28 U.S.C 1746, I declare and verify under penalty of perjury That The following is True and correct.

1). My name is Florin Mulosmani

2). That intel initiated a bogus and punitive investigation To have my visits with my wife suspended, for a minimum of 6 months.

3). That The reason was based on a visit, That never occurred.

4). That after 6 months, my wife appealled To The warden for restatement, and was denied.

5). That after a year, my wife again appealled To The warden for reinstatement, and was again denied.

6). After 18 months, my wife appeailed and was again denied. Reason; "Investigation".

7). Declarant Truly believes This was retaliation behavior by intel, because of continued grievances, and complaints

8). That myself and my wife never violated, our recal any dise, Tickets, abusing or misusing our visiting privileges.

Sign: Florin Mulosmani    Y41650
Date: 6/7/2024



JB Pritzker
Governor



Latoya Hughes
Acting Director

## The Illinois Department of Corrections

Menard Correctional Center
711 Kaskaskia Street • Menard, IL  62259 • (618) 826-5071 TDD: (800) 526-0844

November 19, 2024

Rebecca Chairez
519 N 97th Place
Mesa, AZ 85207

RE:  Visitation- Pedro Chairez, Y35814

Dear Rebecca Chairez:

This is in response to your letter, in which you request restoration of your visiting privileges that were revoked on May 2, 2024.

After a review of your file, it has been decided that your request is denied. You are entitled to a review of your permanent restriction on an annual basis from the date of the offense. You may submit your request in writing to my office at that time.

Sincerely,

Kevin Reichert
Assistant Warden of Operations

KR:lw

cc: Master File
    Intel
    Electric Eye
    Chairez, Y35814

*Mission: To serve justice in Illinois and increase public safety by promoting positive change for those in custody, operating successful reentry programs, and reducing victimization.*

**www.illinois.gov/idoc**

Lo-g $_2$ N

No. 8. 07



EXHIBIT

Declaration under Penalty of Perjury

Pursant to 28 U.S.C. 1746 and 18 U.S.C. 1621,
I, Anthony Butler, declare under penalty of perjury that
the following information contained herein, is true and correct
to the best of my Knowledge.

1). I was placed in administrative detention on 12/1/2012.
I have been in administrative detention for the past 14 years.
I have not been afforded any programs or classes, Nor have
I been told of any way or means to be released from
administrative detention.
   The hearing are already predetermined and denial
automatic. The rationale used in 2012, is almost
identical to the same rationale used in my present
rationale years old intel.
   My Solitary confinement is indefinite with No
idea or signs of when I could be released or even
how.

Date 1/8/25

/S/ Anthony Butler
#K75248

# DECLARATION UNDER PENALTY OF PERJURY

Pursuant to 28 U.S.C 1746 and 18 U.S.C. 1621, I, Bibiano Ruano R52104, declare under penalty of perjury that the following information contained herein, is true and correct to the best of my knowledge.

1. I, Bibiano Ruano was placed on Administrative Detention (A.D.) Status in April 2014.

2. I have been on A.D. Status 11 years

3. I, personally have not been afforded any programs or provided any information to assist in my release from A.D. Status.

4. I have not been advised with clarity why my continued placement is required, Only vague statements that its an Administrative decision. Intelligence Unit only provides the information that was used to place me on A.D. Status as a rationale to deny my release back into population.

Further Afficunt sayeth not.
   /S/ Bibiano Ruano
      Bibiano Ruano
      Reg. No. R52104
      Menard Corr. Cntr.
      P.O. Box 1000
      Menard, IL. 62259



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
prisoner.esl@ilsd.uscourts.gov

## ELECTRONIC FILING COVER SHEET

Please complete this form and include it when submitting any type of document, letter, pleading, etc. to the U.S. District Court for the Southern District of Illinois for review and filing.

Chairez, Pedro
Name

Y35814
ID Number

Please answer questions as thoroughly as possible and circle yes or no where indicated.

1.  Is this a new civil rights complaint or habeas corpus petition?    Yes or No

    If this is a habeas case, please circle the related statute:   28 U.S.C. 2241 or 28 U.S.C. 2254

2.  Is this an Amended Complaint or an Amended Habeas Petition?    Yes or No

    If yes, please list case number: _____

    If yes, but you do not know the case number mark here: _____

3.  Should this document be filed in a pending case?    Yes or No

    If yes, please list case number: _____

    If yes, but you do not know the case number mark here: _____

4.  Please list the total number of pages being transmitted: _____

5.  If multiple documents, please identify each document and the number of pages for each document. For example: Motion to Proceed In Forma Pauperis, 6 pages; Complaint, 28 pages.

| Name of Document | Number of Pages |
|---|---|
| 1983 | 49 |
| Exhibits | 26 |
| | |

Please note that discovery requests and responses are NOT to be filed, and should be forwarded to the attorney(s) of record.  Discovery materials sent to the Court will be returned unfiled.