IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PEDRO CHAIREZ, Y35814, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 25-cv-62-DWD |
| MARCELLUS OTTENSMEIER, | ) |
| KEVIN REICHERT, | ) |
| LUKAS BOHNERT, | ) |
| DIANE ARMSTRONG, | ) |
| LT. LOURE, | ) |
| MENARD WARDEN, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Pedro Chairez, an inmate of the Illinois Department of Corrections (IDOC), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Menard Correctional Center (Menard). (Doc. 1). In the Complaint, Plaintiff alleges that in the fall of 2023 when he began to complain about prison conditions, he then began to experience allegedly adverse actions from staff. (Doc. 1). He characterized some of the interactions as retaliation, he claimed he was the subject of false discipline, that after his disciplinary consequence he was improperly placed in administrative detention, and that staff have interfered with his ability to contact his wife. He was ultimately allowed to proceed on 4 claims against a handful of defendants, and service has now been accomplished. Meanwhile, Plaintiff has filed a Motion for a Preliminary Injunction (Doc. 25), and the Defendants have responded (Doc. 33). Based

on the analysis in this Order, the Court finds it appropriate to deny Plaintiff's Motion because he has not sufficiently demonstrated that he has a reasonable likelihood of success on his claims.

## Background

The facts are more fully recounted in the Court's earlier Order (Doc. 3). Plaintiff began to formally complain about the conditions of confinement at Menard in September of 2023. On September 21, 2023, Plaintiff was escorted to segregation under the guise of an investigation, which he alleges ultimately was the start of retaliation by Defendants Ottensmeier, Bohnert, and Reichert. (Doc. 1 at 22). In October of 2023, Ottensmeier performed a shakedown of Plaintiff's cell and made a comment about seeing if Plaintiff's conditions of confinement had improved. (*Id.* at 23). After the shakedown, Plaintiff alleges he received a disciplinary ticket for items (a screwdriver and pharmaceutical pamphlet) that he claims should not have formed a basis for valid discipline. He claims that at that point, he realized Ottensmeier had singled him out for retaliation.

From October of 2023 through December of 2024, Plaintiff faults Defendant Ottensmeier for intentionally destroying or disposing of letters from his wife, or substantially delaying their delivery. (Doc. 1 at 24). Plaintiff alleges that Ottensmeier was able to do this because he is the sole party responsible for reviewing mail to administrative detention inmates. Around the same time, he claims he filed three grievances (one dealing with his October 2023 disciplinary tickets), but one of the three went missing. Plaintiff concluded that his discipline was coordinated at the hands of a small group of prison employees who act with impunity, which made him concerned

about lodging further grievances or complaints. (Doc. 1 at 24). Plaintiff resigned to stop complaining, but in early December of 2023, his wife persuaded him to resume his efforts. Plaintiff instructed her to contact Menard's Warden and IDOC's Director. (Doc. 1 at 24).

On December 18, 2023, Defendant Ottensmeier arrived at Plaintiff's cell and gave him an administrative detention placement notice he had prepared with the assistance of Defendant Bohnert. (Doc. 1 at 24-25). Plaintiff asked why he was being given the notice, and Ottensmeier said, "you mess with us, we mess with you." (Doc. 1 at 25). The next day Plaintiff received a disciplinary ticket for distributing drugs. Plaintiff claims this new ticket came just two days before his scheduled release from segregation for the tickets relating to the screwdriver and drug pamphlet. He alleges that the December 20, 2023, administrative detention hearing and the December 22, 2023, disciplinary hearing on the new ticket were both "shams." (Doc. 1 at 25). These sanctions led to a flurry of grievance activity, and Plaintiff claims that in the mix he somehow lost privileges to communicate with his wife, though that was not a disciplinary sanction listed on the ticket or administrative detention notice.

Following a review of the Complaint, the Court allowed Plaintiff to proceed on the following claims:

> **Claim 1:** First Amendment retaliation claim against Defendants Reichert and Ottensmeier for their handling of Plaintiff's complaints about the conditions at Menard in September of 2023, and for subsequent disciplinary proceedings and administrative detention decisions;
>
> **Claim 2:** Fourteenth Amendment Due Process claim against Defendants Ottensmeier and Bohnert for the Notice that led

>    to Plaintiff's placement in administrative detention, and against Defendants Armstrong and Loure for keeping Plaintiff in administrative detention without sufficient justification;
>
> **Claim 4:** **First Amendment claim against Defendant Ottensmeier for interfering with Plaintiff's incoming and outgoing mail exchanged with his wife;**
>
> **Claim 5:** **First, Eighth, or Fourteenth Amendment claim against Defendants Ottensmeier, Bohnert and Reichert for implementing multiple restrictions on Plaintiff's ability to communicate with and visit with his wife.**

(Doc. 3).

## Motion for a Preliminary Injunction

In Plaintiff's Motion for a Preliminary Injunction, he argues in essence that since the filing of this lawsuit, the alleged retaliation by Defendants Bohnert and Ottensmeier has continued. He claims that Bohnert and Ottensmeier have complete control over his communications from within Administrative Detention, including grievances and mail with outside individuals. He claims that in March and April of 2025, he has filed grievances about the issues he is having concerning interference with his mail and email. He also alleges that Ottensmeier made a comment about his ability to "serve" Plaintiff while delivering legal mail. Following that comment, Plaintiff alleges he got a "bogus" disciplinary ticket from Ottensmeier that was minor but was meant to send a signal and to frustrate his ability to communicate with his loved ones. (Doc. 25 at 4). Plaintiff alleges that as an inmate in Administrative Detention, he is particularly vulnerable because all of his communications both inside and outside of the prison flow through Ottensmeier and Bohnert. In support of his Motion, Plaintiff included a memorandum of law wherein

he argued he was likely to succeed on the merits of his retaliation and mail interference claims, the harm to him of not having family communications is irreparable, the cost to the prison of transferring him away from these issues is low, and it is in the public interest to ensure prison officials are not violating the law.  He also submitted a declaration, proof that he filed two grievances in March and April of 2025, and the disciplinary ticket from April 4, 2025, that he claims was "bogus."  (Doc. 25 at 17-19).

In the disciplinary report, Defendant Ottensmeier reported that there was a "permanent stop order with IDOC" concerning communications between Plaintiff and Rebecca Chairez (his wife) after it was discovered by internal and external investigations that Rebecca Chairez had been sending "oxycodone, fentanyl, methamphetamine, and cell phones through the incoming mail with Chairez being the intended recipient of that mail."  (Doc. 25 at 17).  Despite the "permanent stop order," Ottensmeier went on to describe that throughout March of 2025, Plaintiff had multiple contacts via email and telephone that were suspected as communications with Rebecca Chairez in violation of the permanent stop order.  Ottensmeier concluded that based on an investigation by IDOC staff, Plaintiff had violated the permanent stop order. (Doc. 25 at 18).

The Court also notes that in support of the underlying complaint in this case, Plaintiff included disciplinary documents.  A December 19, 2023, disciplinary report indicated that Plaintiff had been identified "as being a source of distributing drugs, specifically methamphetamine throughout Menard Correctional Center."  (Doc. 1 at 63).  The Adjustment Committee Summary associated with the December 19, 2023,

disciplinary report indicated that Plaintiff was disciplined for these allegations. (Doc. 1 at 107-08).

## Defendants' Response (Doc. 32)

Defendants contend that Plaintiff's Motion should be denied for multiple reasons. (Doc. 32). First, they contend that as to his request to be transferred to another prison, transfers are within the purview of daily operations of the prison, and courts rarely get involved in this level of daily decision-making. As to other factors weighing on preliminary injunctive relief, the Defendants contend that Plaintiff has not demonstrated a reasonable likelihood of success on his claims. They argue Plaintiff cannot establish a retaliation claim related to the discipline because he was disciplined for violating prison rules. They also argue he cannot maintain a claim under the First Amendment related to his ability to communicate with others because he only retains First Amendment rights consistent with his status as a prisoner and with legitimate penological objectives. Restrictions related to penological objectives are permissible. Defendants argue that in relation to all of Plaintiff's operative claims in this case, there are underlying legitimate penological reasons for the things that have occurred, and the Court should not overturn those findings by the prison. Finally, they argue Plaintiff has not shown how harm to him would outweigh the prison's interest in security, and he has not shown that granting the relief would not harm the public interest or contravene the PLRA's requirements that injunctive relief be narrowly drawn.

## Analysis

To seek a preliminary injunction, a plaintiff must establish: a likelihood of success on the merits of his claim; no adequate remedy at law; and, irreparable harm without the injunctive relief. See Mays v. Dart, 974 F.3d 810, 818 (7th Cir. 2020). As for the first requirement, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." AM General Corp. v. DaimlerChrysler Corp., 311 F.3d 796, 804 (7th Cir. 2002). "A movant's likelihood of success on the merits must be strong." Tully v. Okeson, 977 F.3d 608, 613 (7th Cir. 2020). While Plaintiff is not required to "show that [he] definitely will win the case…a mere possibility of success is not enough," and he must make "[a] strong showing that [he] is likely to succeed on the merits." Ill. Republican Party v. Pritzker, 973 F.3d 760, 763 (7th Cir. 2020). A strong showing typically entails a demonstration of how the applicant intends to prove key elements of his case. Ill. Republican Party v. Pritzker, 973 F.3d 760, 762-63 (7th Cir. 2020); Doe v. University of Southern Indiana, 43 F.4th 784, 791-92 (7th Cir. 2022) (the court is not required to make inferences in the movant's favor when considering preliminary injunctive relief).

The Court must also decide whether an adequate remedy at law exists and whether the plaintiff will suffer irreparable harm without injunctive relief. Irreparable harm is harm which cannot be repaired. Graham v. Med. Mut. Of Ohio, 130 F.3d 293, 296 (7th Cir. 1998) ("Irreparable harm is harm which cannot be repaired, retrieved, put down again, atoned for. The injury must be of a particular nature, so that compensation in money cannot atone for it."). The Court must then weigh "the balance of harm to the

parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest."  Id.; Korte v. Sebelius, 735 F.3d 654, 665 (7th Cir. 2013).  "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor."  Korte, 735 F.3d at 665.

An injunction that seeks an affirmative act by the respondent is a mandatory preliminary injunction and should be sparingly issued.  Mays, 974 F.3d at 818.  If injunctive relief is warranted, the Prison Litigation Reform Act provides that the injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm."  18 U.S.C. § 3626(a)(2).

Plaintiff's present demand for injunctive relief is tied to three of his operative claims—Claim 1 for retaliation and Claims 4 and 5 about his ability to communicate with his wife.  It is important to remember that the Court only allowed Claim 1, the retaliation claim, to proceed against Defendants Ottensmeier and Reichert, but not Defendant Bohnert.  To be eligible for injunctive relief against a Defendant, Plaintiff must have an underlying claim on the same issue for which the injunctive relief is sought.  Thus, to the extent Plaintiff is seeking injunctive relief from Defendant Bohnert related to alleged retaliation, he cannot proceed on this very narrow issue because there is no operative claim against Bohnert about retaliation.

By contrast, Plaintiff does have an operative claim against Defendant Ottensmeier wherein he alleges retaliation, and in his Motion for a Preliminary Injunction, he alleges

more similar conduct. Specifically, in the complaint Plaintiff alleged that Ottensmeier participated in a "sham" disciplinary hearing in December of 2023, and also facilitated his placement in Administrative Detention in 2023. He argues both of these actions were baseless. In a similar vein, in the Motion for a Preliminary Injunction, he now alleges that Ottensmeier has participated in another "bogus" disciplinary incident as retaliation, and that Ottensmeier has made verbal comments that suggest retaliation or a desire to deter Plaintiff from pursuing his rights.

A successful claim for First Amendment retaliation requires that a plaintiff show, "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). "To make a prima facie showing of causation the plaintiff must show only that the defendant's conduct was a sufficient condition of the plaintiff's injury." *Greene v. Doruff*, 660 F.3d 975, 980 (7th Cir. 2011). Then the burden shifts to the defendant to rebut plaintiff's prima facie showing by establishing that "his conduct was not a necessary condition of the harm—the harm would have occurred anyway." *Id.*

An inmate may meet the *prima facie* showing by offering direct or circumstantial evidence that the defendant's actions were motivated by retaliation. *See e.g., Kidwell v. Eisenhauer*, 679 F.3d 957, 965-66 (7th Cir. 2012). "Circumstantial evidence, however, is evidence from which a trier of fact may infer that retaliation occurred. 'Circumstantial

evidence may include suspicious timing, ambiguous oral or written statements, or behavior towards or comments directed at other [individuals] in the protected group.'" *Id.* Suspicious timing alone is rarely enough to make out a retaliation claim. *Manuel v. Nalley*, 966 F.3d 678, 680-81 (7th Cir. 2020).

Once an inmate makes a *prima facie* showing "[t]he burden then shifts to the defendant[ ] to show that [he] would have taken the action despite the bad motive." *Mays v. Springborn*, 719 F.3d 631, 635 (7th Cir. 2013). Actions that would have occurred regardless of the protected speech cannot form the basis for a retaliation claim. *See e.g., Manuel v. Nalley,* 966 F.3d 678, 681 (7th Cir. 2020) (finding that at summary judgment, an inmate could not proceed on his retaliation claim where the defendants established that they did a cell shakedown based on a report of contraband), *Antoine v. Ramos*, 497 Fed. App'x 631, 634 (7th Cir. 2012) (finding that a shakedown was not retaliatory where guards alleged that they conducted the shakedown due to a report of contraband, and Plaintiff did not proffer any evidence that this was inaccurate).

Plaintiff has alleged that Ottenmeier's actions both in December of 2023 and April of 2025 were retaliatory based on the timing of the incidents relative to his grievance activity, and the allegedly baseless disciplinary tickets that followed. As the Court noted in the initial review of Claim 1, suspicious timing alone is rarely enough to sustain a claim, and Plaintiff will likely need additional evidence about these alleged incidents later in the case to have a reasonable chance of success. The Court also notes that under controlling precedent, actions that would have occurred regardless of the protected speech cannot form a basis for retaliation. Both of the disciplinary reports that Plaintiff

takes umbrage with have a factual basis entirely independent of his grievance activity at the prison. The disciplinary reports are thorough, and strongly suggest there was an independent basis to discipline Plaintiff. His bald assertion that the reports or disciplinary proceedings were a sham are not enough to suggest he has a reasonable likelihood of success on the merits of his First Amendment retaliation claim because these bare assertions would not be sufficient to show the reasons for discipline were pretextual or false. Thus, the Court finds that at this juncture Plaintiff has not put forth sufficient evidence to demonstrate a reasonable likelihood of success on his retaliation claim, and he cannot qualify for preliminary injunctive relief related to this issue.

Second, Plaintiff contends that he is experiencing ongoing issues communicating with his wife. Specifically, he claims he has encountered lengthy delays in exchanging physical mail. The prison cannot arbitrarily interfere with his mail, but the prison can place restrictions that are "reasonably related to legitimate penological interests." *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). Prison security can be a legitimate justification for practices concerning non-legal mail. *See e.g.,* Gaines v. Lane, 790 F.2d 1299, 1304 (7th Cir. 1986). The evidence that Plaintiff has submitted on his own behalf, in the form of the two disciplinary reports, strongly suggests that the prison has a legitimate security-related basis to place restrictions on his ability to communicate, and that even after these restrictions were placed, he has continued to attempt communications that violate the restrictions.

Plaintiff argues that under *Sizemore v. Williford*, 829 F.2d 608 (7th Cir. 1987) the continued and lengthy delays of his mail are unacceptable. In *Sizemore* the Seventh

Circuit held that a District Court was incorrect to dismiss a complaint at screening for failure to state a claim where the inmate alleged a permanent and intentional deprivation of a daily newspaper subscription.  By contrast, in *Rowe v. Shake*, 196 F.3d 778 (7th Cir. 1999), the Seventh Circuit held that frequent delays of an inmate's receipt of letters from an outside sender, some delays being as long as 26 days, was insufficient to state a claim. In *Van den Bosch v. Raemisch*, 658 F.3d 778, 785-86 (7th Cir. 2011), the Court explained that the *Turner* four factor test should be applied to a prison's restrictions on inmate mail.  The test requires a court assessing prison regulations to consider: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether the inmates have access to "alternative means" of exercising the restricted right; (3) the "impact [an] accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether the regulation is an "exaggerated response to prison concerns.  *Turner v. Safley*, 482 U.S. 78, 89-91 (7th Cir. 2011).  While the burden of persuasion is on the prisoner to disprove the validity of a regulation, *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (citations omitted), defendants must still articulate their legitimate governmental interest in the regulation. *Turner*, 482 U.S. at 89.  Courts are to accord "substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton*, 539 U.S. at 132.

Here, applying the *Turner* standards, there is certainly a valid reason for the prison to take time to screen mail between Plaintiff and his wife given the findings in the disciplinary proceedings that suggest that they have collaborated to introduce contraband into the prison and have subsequently attempted to circumvent restrictions on their ability to communicate via telephone and electronic messages. The Court defers to the prison's arguments about security in this context, which are obviously quite significant. *See e.g., Van Den Bosch v. Raemisch*, 658 F.3d 778, 790 (7th Cir. 2011) (affirming summary judgment for prison on mail regulations related to security concerns). Plaintiff's alternative means to communicate other than the phone or electronic messaging is in written format, but with written communications, he has described drastic slow downs, and not a total denial of the ability to communicate. He has not established what impact any accommodation would have on the prison, nor has Plaintiff introduced anything to suggest that slow screening of his mail is an exaggerated response to the situation the prison suspects between he and his wife related to introducing contraband into the prison. At this preliminary juncture, Plaintiff simply has not put forth the sort of evidence that would be needed to establish he has a reasonable likelihood of success on this issue. It would be wholly impractical for the Court to insert itself in the midst of a communication issue between two individuals who are alleged to have transmitted contraband into the prison. The Court is not in a position to play postmaster for an inmate, dictating when and how mail should flow into the prison, nor is it well-suited to assess the relative security threat posed by any particular correspondence. As

such, the Court finds it appropriate to deny Plaintiff's requested preliminary injunctive relief related to his ability to communicate with his wife.

Plaintiff has also asked that he be transferred to another prison, but this is an extreme measure, which the Court would only consider exercising in the most serious of situations. As with the ability to control prison mail for security purposes, the prison is also better suited than the Court to make decisions about which inmates should be housed at any one location. It is also important to note that it appears that Plaintiff's communication or visitation limits with his wife would follow him from one IDOC facility to another, because the restriction is described as "a permanent stop order with IDOC." Thus, it does not appear that a transfer would necessarily alleviate the issues about which Plaintiff complains.

Based on the foregoing analysis, the Court finds it appropriate to deny Plaintiff's Motion for a Preliminary Injunction, because he has not satisfactorily demonstrated a reasonable likelihood of success on the merits of his underlying claims. Additionally, applying the sliding scale analysis to balance the harms, if the likelihood of success is low, the harm to Plaintiff in the interim would have to be substantial. Plaintiff simply has not established a substantial harm. He is still allowed to communicate with his wife via physical mail, it is just much slower than he would like. These slow downs appear to be a consequence of his own behavior, including his recent attempts to circumvent communication restrictions. Viewed in this light, the harm to Plaintiff does not tip the scales in favor of any preliminary injunctive relief. The burden of the proposed relief

would also be quite high on the prison because it would require mandatory acts that implicate security concerns. Thus, the Motion will be denied.

## Disposition

**IT IS HEREBY ORDERED THAT** Plaintiff's Motion for a Preliminary Injunction (Doc. 25) is **DENIED without prejudice**.

**IT IS SO ORDERED.**

Dated: June 9, 2025

_____
DAVID W. DUGAN
United States District Judge