**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **Pedro Chairez**, Plaintiff(s).     ) | |
|           ) | |
|      **Plaintiff,**         ) | |
|           ) | |
| **vs.**           ) | **Case No. 25-cv-62-DWD** |
|           ) | |
| **Marcellus Ottensmeier, et al.,**    ) | |
|           ) | |
|      **Defendants.**       ) | |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

Plaintiff Pedro Chairez, an inmate of the Illinois Department of Corrections currently detained at Menard Correctional Center, proceeding without counsel, moves for reconsideration of Claim 3 a second time. (Doc. 52). Plaintiff invokes Federal Rule of Civil Procedure 60(b)(5), or alternatively Rule 60(b)(6), and asks the Court to reinstate Claim 3, the Fourteenth Amendment due process claim against Defendant Schoenbeck concerning the December 2023 disciplinary proceedings and the Adjustment Committee's reliance on confidential informants. Defendants oppose the motion. (Doc. 56). For the reasons discussed below, the motion is **DENIED**.

**BACKGROUND**

The Court screened Plaintiff's Complaint under 28 U.S.C. Section 1915A on January 23, 2025. (Doc. 3). The court allowed Plaintiff to proceed on claims concerning alleged retaliation, due process in connection with administrative detention, interference with mail, and restrictions on in-person visitation. The Court dismissed Claim 3, which

challenged Defendant Schoenbeck's handling of the December 2023 disciplinary hearing and the use of confidential informants. The Court explained that the direct consequences of the disciplinary ticket were three months of segregation and three months of C-grade; Plaintiff's separate allegations concerning longer-term administrative detention were analyzed separately under Claim 2. (Doc. 3 at 16–18).

Plaintiff then moved for reconsideration of the dismissal of Claim 3. (Doc. 7). The Court denied that motion on June 9, 2025. (Doc. 38). The Court again concluded that Claim 3 was limited to the process due in connection with the disciplinary proceedings themselves, that the procedures applicable to the administrative-detention placement were already being litigated under Claim 2, and that Plaintiff had not alleged that he lacked notice of the disciplinary allegations or an opportunity to present his views to the Adjustment Committee.

Plaintiff now argues that the Seventh Circuit's decision in *Jackson v. Anastasio*, 150 F.4th 851 (7th Cir. 2025), changed the governing law and requires reinstatement of Claim 3. Plaintiff reads *Jackson* to mean that a short term of segregation, and particularly any later administrative detention that follows a disciplinary proceeding, necessarily and categorically imposes an atypical and significant hardship requiring more formal process than the informal process provided for in *Ealy v. Watson*, 109 F.4th 958 (7th Cir. 2024).

## LEGAL STANDARD

Plaintiff cites Rule 60(b), but Rule 60(b) is not the rule that governs this motion. Rule 60(b) applies to a final judgement, order, or proceeding. Fed. R. Civ. P. 60(b). The dismissal of Claim 3 was not a final judgement because other claims remain pending and the Court did not enter a partial final judgement under Rule 54(b).

Recognizing that the Plaintiff is proceeding *pro se*, the Court therefore construes Plaintiff's filing as a request to revise an interlocutory ruling under Rule 54(b). Rule 54(b) provides that an order deciding fewer than all claims may be revised at any time before final judgement. Fed. R. Civ. P. 54(b). This construction gives Plaintiff the benefit of the more flexible rule and considers the substance of his filing despite the Rule 60 label.

Rule 54(b) gives the Court discretion to take a second look at a non-final ruling, but it does not require the Court to revisit the same issue each time a party disagrees with the result. Reconsideration is appropriate when there is a good reason for a second look, such as new controlling law, newly discovered facts, or a clear error in the prior ruling. While arguably Plaintiff's reliance on *Jackson* does not provide a fair reason to look again at Claim 3, for the purposes of expediency and explanation, the Court will in this instance accommodate Plaintiff. Accordingly, the question is whether *Jackson* changes the analysis for this Plaintiff and this claim as he asserts. It does not.

## DISCUSSION

*Jackson* does not warrant reinstatement of Claim 3 because the decision in that case is not the one the Plaintiff describes. Despite Plaintiff's characterization, *Jackson* did not

3

hold that every short term of disciplinary segregation creates a protected liberty interest. It also did not hold that administrative detention is, by itself, always an atypical and significant hardship.

*Jackson* involved a prisoner who spent three months in disciplinary segregation under conditions the Seventh Circuit described as appalling. The prisoner submitted evidence that his segregation cell had feces and urine on the walls, constant noise from inmates banging on the cell doors, water contaminated with bacteria that caused Legionnaire's disease, and roaches and mice. *Jackson*, 150 F.4th at 860–61. The Seventh Circuit held that, "[m]oving forward, such a short term of solitary confinement combined with comparable disgusting conditions will suffice to show a loss of protected liberty requiring procedural protections." *Id.* at 864. The court also made clear that three months in segregation is not long enough, standing alone, to create a liberty interest. *Id.* at 862.

That distinction controls here. Plaintiff does not allege in Claim 3, or in the present motion, that his December 2023 disciplinary sanction placed him in disciplinary segregation under conditions comparable to those in *Jackson* or that were otherwise "disgusting". *Id.* at 860. Plaintiff here only alleges that the disciplinary ticket led to administrative detention, and that administrative detention is by its vary nature an atypical and significant hardship. He does not even allege that the "conditions in segregation were considerably harsher than those of the normal prison environment." *Id.* In sum, Plaintiff pins his hopes on an overly broad reading of the holding in *Jackson.* He overlooks that *Jackson* does not change long-standing precedent that standing alone, segregation measured in months does not implicate a liberty interest.

4

The distinction between Claim 2 and Claim 3 is important. Claim 2 remains pending and concerns the notice and justification for Plaintiff's placement and continued placement in administrative detention. If Plaintiff has evidence that his administrative detention was unsupported, poorly explained, retaliatory, or otherwise unlawful, that evidence relates to Claim 2. The fact that administrative detention officials later considered or referred to the December 2023 disciplinary matter does not mean that *Jackson* revives the separate disciplinary-hearing claim that the Court designated as Claim 3.

For that reason alone, reconsideration is not warranted. *Jackson* changed the law only for short terms of solitary confinement combined with comparable appalling conditions, and Plaintiff has not alleged similar conditions as part of Claim 3.

But there is a second, independent reason that the motion fails. Even if the Court assumed for the purposes of this motion that Plaintiff had identified a protected liberty interest, Claim 3 would not proceed because Plaintiff has not shown that he was denied the process required under current Seventh Circuit law.

About two months after *Jackson*, the Seventh Circuit decided *Torres v. Brookman*, 155 F.4th 952 (7th Cir. 2025). *Torres* involved a Menard prisoner who received three months in disciplinary segregation and alleged harsh and unsanitary conditions. The Seventh Circuit assumed, without deciding, that the conditions created a protected liberty interest. It still affirmed judgement for the defendants because *Adams v. Reagle*, 91 F.4th 880 (7th Cir. 2024), held that prisoners who do not face loss of good-time credit or

5

other sentence-lengthening punishment are entitled only to informal, non-adversarial due process. *Torres*, 155 F.4th at 958–61; see also *Adams*, 91 F.4th at 89–96.

Informal due process does not require the full set of procedures described in *Wolff v. McDonnell*, 418 U.S. 539 (1974), unless good-time credits or another sentence-lengthening punishment is at stake. Under *Adams*, *Ealy*, and *Torres*, the relevant question remains whether Plaintiff received notice of the reasons for the disciplinary action and an opportunity to present his views. As discussed in the Court's first Denial of Reconsideration, the pleadings and exhibits show that he did. (Doc. 38). Plaintiff continues to disagree with the use and reliability of the confidential-source information. The Court understands that concern. But *Jackson* did not address or change the law governing confidential informants in prison disciplinary proceedings. The Court has already considered that issue, twice. (Doc. 3); (Doc. 38). Plaintiff's disagreement with the Courts conclusions does not show that he lacked notice or a chance to respond, and it does not make Claim 3 viable under *Jackson*.

Plaintiff also clarifies that he intended to challenge the adequacy of the disciplinary notice itself. The Court understands Plaintiff to argue that the December 2023 ticket did not give him enough detail about the "who, what, how, when" of the alleged conspiracy to allow him to prepare a defense. (Doc. 52) at 3. The Court has considered that clarification. It does not change the result.

The disciplinary report identified the charged offenses, the date and approximate time of the report, the location as Internal Affairs, the theory that drugs and drug paraphernalia were being received through institutional mail and distributed inside

6

Menard, the alleged drug as methamphetamine, and the basis for the charge as statements from three confidential sources who identified Plaintiff as a source of distribution. (Doc. 1) at p. 63; (Doc. 38) at pp. 2–3. The report also advised Plaintiff that he could appear, give a written or oral statement, request witnesses, and request additional time if was unable to prepare a defense. (Doc. 1) at p. 63. Under the informal due process standard applicable to Claim 3, the Constitution required only notice of the reason for the disciplinary segregation and an opportunity to present his views. *Ealy v. Watson*, 109 F.4th 958, 965 (7th Cir. 2024); *Adams v. Reagle*, 91 F.4th 880, 895 (7th Cir. 2024). The ticket and hearing procedures satisfied that standard.

Although Rule 54(b) governs this motion, the result would have been the same under Rule 60(b). Rule 60(b)(5) would not apply because, as discussed above, *Jackson* did not reverse or vacate any judgement on which this Court's ruling was based. Rule 60(b)(6) also would not apply because *Jackson* does not create an extraordinary circumstance requiring Claim 3 to be reopened.

**Disposition**

For these reasons, Plaintiff's Motion for Rule 60 Fed. R. Civ. Procedure is **DENIED**. Claim 3 remains dismissed, and Defendant Schoenbeck remains terminated. Claims 1, 2, 4, and 5 remain pending.

Nothing in this Order decides the merits of Claim 2 or limits Plaintiff's ability to litigate the due process issues that remain pending concerning his administrative-detention placement and continuing reviews.

Plaintiff is advised that the Court has now twice reconsidered the dismissal of Claim 3. Further motions seeking to revive Claim 3 may be summarily denied if they repeat arguments the Court has already addressed, or, as here, rely on authority that does not change the analysis. This warning does not prevent Plaintiff from litigating Claims 1, 2, 4, and 5, complying with case deadlines, responding to motions, or preserving his disagreement with the dismissal of Claim 3 for review.

**SO ORDERED.**

Dated: June 4, 2026

Judge Dugan

Digitally signed by Judge Dugan
Date: 2026.06.04 09:20:04 -05'00'

DAVID W. DUGAN
United States District Judge

8